[S. F. No. 9402. In Bank.—July 28, 1921.]

EDMUND A. ROSSI, Plaintiff and Appellant, v. ARTHUR J. CAIRE et al., Defendants and Respondents; AGLAE S. CAPUCCIO, Individually and as Trustee, etc., Defendant and Appellant.

[1] CORPORATIONS—ACTS OF TRUSTEES OF DISSOLVED CORPORATION—ACTION TO SET ASIDE—STATUTE OF LIMITATIONS—CONSTRUCTION OF CODE AMENDMENT.—Subdivision 3 of section 340 of the Code of Civil Procedure, added in 1917, which bars an action to set aside or invalidate any action taken or performed by a majority of the trustees of any corporation dissolved by operation of law before or subsequent to the amendment, including the revivor of any such corporation, unless brought within six months, cannot be accepted as absolutely destroying any right of action existing at the time of the adoption of the amendment.

[2] ID.—FORFEITURE OF CHARTER—FAILURE TO PAY LICENSE TAX—STATUS OF CORPORATION PRIOR TO ENACTMENT OF 1913.—Prior to the enactment of the legislation of the year 1913 authorizing a revivor of such corporations as had theretofore failed to comply with the requirements of the license tax law, and whose charters had been forfeited for such reason, a corporation upon failure to pay such tax within the prescribed time ceased to exist and the corporation no longer had any interest in the property, and those who were its stockholders at the time of its death were immediately vested with the right to have its affairs settled by the trustees designated by the statute for that purpose and the property remaining after such settlement distributed among them according to their respective interests.

[3] ID.—REVIVAL OF CORPORATION—ASSENT REQUIRED—CONSTRUCTION OF RELIEF LEGISLATION.—The assent of the former stockholders of a corporation which has forfeited its charter for nonpayment of its license tax is not required to a revival of the corporation under the relief legislation, but the assent of the statutory trustees and payment of the tax and penalties is sufficient to effect a rehabilitation.

[4] ID.—FORFEITURE PRIOR TO RELIEF LEGISLATION—REVIVAL OF CORPORATION — RIGHTS OF NONCONSENTING STOCKHOLDER.—The provision of the act of 1913 allowing the rehabilitation of corporations which have forfeited their charters for nonpayment of license taxes cannot be enforced against a nonconsenting stockholder of a corporation which had forfeited its charter for such reason prior to the enactment of any legislation permitting relief from such forfeitures, where such stockholder diligently asserted his objection to the revival.

[5] ID.—VESTED PROPERTY RIGHTS OF STOCKHOLDERS.—The rights of
stockholders of a corporation, which had forfeited its charter for
nonpayment of its license tax prior to the enactments authorizing
relief from such forfeiture, to have the property of the corporation
distributed among them after the payment of the former corpora-
tion's debts and the expenses of liquidation, was a vested property
right secure against impairment by subsequent legislation.

APPEALS from a judgment of the Superior Court of the
City and County of San Francisco and from an order deny-
ing the motion to vacate and enter a different judgment.
James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

D. Freidenrich, Ambrose Gherini and Orrin K. McMurray
for Plaintiff and Appellant.

Ambrose Gherini for Defendant and Appellant.

Frank P. Deering and J. F. Bluxome for Respondents.

ANGELLOTTI, C. J.—This is an action brought by the
successor in interest of a stockholder of the Santa Cruz Is-
land Company, a domestic corporation for profit, whose
charter was forfeited to the state on November 30, 1911, for
nonpayment to the state of its license tax, against the five
persons who were the directors in office at the time of the
forfeiture and the only other stockholder, to obtain an ac-
counting and distribution according to their respective inter-
ests, to the stockholders, of the property owned by the
corporation at the time of forfeiture and its proceeds in the
hands of said former directors as trustees for such corpora-
tion, and its stockholders. Aglae S. Capuccio, one of said
directors and trustees, by answer, joined with the plaintiff
in seeking this relief. Judgment went in favor of the other
defendants. The appeals here are by the plaintiff and de-
fendant Aglae S. Capuccio from the judgment and from an
order denying their motion to set aside the judgment and
enter a judgment in their favor.

There is no dispute as to the material facts. The com-
pany was incorporated February 19, 1869, for a period of
fifty years. It was a going concern until November 30, 1911,
when its charter was forfeited for nonpayment of its license

tax of that year. At that time it owned personal property valued at two hundred and fifty thousand dollars and Santa Cruz Island, comprising about fifty-eight thousand eight hundred acres of land. Its capital stock was fifty thousand dollars, divided into one hundred shares of the par value of five hundred dollars each. The four directors and trustees who are respondents here owned in the aggregate seventy-nine of these shares, and respondent Helene A. Caire seven shares, while director and trustee Aglae S. Capuccio, one of the appellants, owned seven shares, and Amelie A. Rossi, plaintiff's predecessor in interest, owned the remaining seven shares. At the time of the forfeiture of the corporation there was no provision of law looking to or providing for the rehabilitation of any corporation whose charter had been so forfeited. Section 6 of the License Tax Act of 1905 (approved March 20, 1905, Stats. 1905, p. 493), as amended in 1909 (act approved March 19, 1909, Stats. 1909, p. 454), provided for such rehabilitation only as to such corporations as had previously failed to pay the license tax and penalty imposed by the license tax act. The constitution provided, as it has ever since 1850, that "all laws now in force in this state concerning corporations, and all laws that may be hereafter passed, pursuant to this section, may be altered from time to time or repealed" (sec. 1, art. XII), and, also, as amended in 1908, that "the legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter of any *quasi*-public corporation now existing or which shall hereafter exist under the laws of this state." (Sec. 7, art. XII.) The amendment of 1908 was the insertion of the words "*quasi*-public"—obviously for the purpose of limiting the prior absolute prohibition as to all corporations to *quasi*-public corporations, and thus to allow the legislature to provide, under its general powers with relation to all laws relative to corporations, for the remission of forfeiture of the franchise or charter of any corporation except a *quasi*-public corporation, if it saw fit so to do. The original License Tax Act (Stats. 1905, p. 493) contained no provision for a revivor of the corporation whose charter was forfeited for failure to pay the tax, but at each succeeding session of the legislature the act was so amended as to provide for such revivor as to corporations that *had* failed to pay. (Stats. 1906, Ex. Sess., p. 22; Stats. 1907, p. 745; Stats. 1909, p. 454; Stats. 1911, p. 1094, and Stats. 1913,

p. 513, when the act was repealed.) By the amendment of 1906 it was provided that "any corporation which failed to pay the license tax and penalty required by the act" might pay the same within a certain time, and that any corporation so doing "shall be relieved from the forfeiture prescribed." The subsequent amendments of section 6 were substantially the same up to those of 1909, 1911 and 1913, each of which included a provision that "the rehabilitation of a corporation under the provisions of this act shall be without prejudice to any action, defense or right which accrued by reason of the original forfeiture." By the act of 1906 and all of the subsequent acts relative to rehabilitation, it was substantially provided that in the event that the original name of the corporation or a name so closely resembling the same as would tend to deceive had been adopted by some other corporation since the date of forfeiture, then such corporation shall be relieved from forfeiture only on adopting a new name. In the act of 1906, and ever since, section 10a provided that "in all cases of forfeiture under the provisions of this act, the directors or managers in office . . . are deemed to be the trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited, and have full power to settle the affairs of the corporation," and "to take such legal proceedings as may be necessary to fully settle the affairs of said corporation." The directors in office on November 30, 1911, apparently took no step in liquidation, and upon the enactment of the amendment of 1913 authorizing a revivor of such corporation as had failed to pay took the necessary steps to revive the corporation. No point is made as to the validity of the meeting of the trustees held August 25, 1913, at which the resolution looking to a revivor of the corporation was adopted. Four of the five trustees (all except Aglae S. Capuccio), owning seventy-nine of the one hundred shares, were present, and the action was unanimous, and another stockholder owning seven shares requested such action. In accord with the resolution, application was made as provided in the act, the license tax for 1911, 1912, and 1913, and penalties and fee were paid, and on August 28, 1913, the Secretary of State issued his certificate. Immediately thereafter the trustees delivered all the assets in their hands, including the real property, to the corporation, which has ever

since been in the use and possession thereof. To confirm the title to the corporation to the real property a conveyance was attempted to be authorized at a meeting of the trustees held January 30, 1917, at which all were present except Aglae S. Capuccio, who had been notified, and sent a protest. In accord with this authorization a conveyance was executed by the four trustees present and delivered to the corporation. The corporation has ever since its revivor been acting as a corporation, holding its annual meetings and dealing with the property here involved as its property. The revivor of the corporation and all subsequent dealings with the property were without the consent of Aglae S. Capuccio, Amelia A. Rossi, and plaintiff, and it is not claimed that there was anything by way of act or omission in the conduct of either Amelia A. Rossi or plaintiff to estop either from making the claims here presented.

[1] This action was instituted August 28, 1917, just four years after the attempted revivor. Defendants interposed a plea of the statute of limitations, alleging the action to be barred by subdivision 3 of section 341 of the Code of Civil Procedure, a subdivision added by the legislature July 27, 1917, [Stats. 1917, p. 381]. This section as so amended bars an action "to set aside or invalidate any action taken or performed by a majority of the trustees of any corporation heretofore or hereafter dissolved by operation of law, including the revivor of any such corporation," unless brought within six months. We regard this matter and the finding of the court thereon as unimportant in the determination of this cause. The amendment cannot be accepted as absolutely destroying any right of action existing at the time of its adoption, which would be the effect if applied here in any other way than as requiring an action to be instituted within a reasonable time from the taking effect of the amendment. (Sec. 17, Ruling Case Law, p. 676, et seq.)

The theory of respondents is that by virtue of the proceedings had looking to a rehabilitation the corporation was restored to life on August 28, 1913, with full ownership of the property in the hands of the trustees, and has ever since been functioning as a corporation, and that the interests of the former stockholders or successors in such property is only such interest as a stockholder has in the property of the corporation.

[2] The status of a corporation whose charter is forfeited under the license tax act referred to is well settled by decisions of this court. The penalty imposed by the act for non-payment of the license tax prescribed was exceedingly severe and the consequence doubtless often disastrous. But in view of our constitutional provisions the absolute power of the state over corporation charters was such, and the intention of the act to accomplish this end was so clearly and unambiguously shown thereby, that there could not be any well-founded difference of opinion as to the result. The Governor's proclamation having been duly made and the corporation having failed to pay within the specified time thereafter, the corporation simply ceased to exist, just exactly as in the case of a forfeiture for cause by judicial decree, without any existing provision of law for rehabilitation as a corporation. It was not a case simply of suspended animation, as under the present license tax law, but one of absolute death, and, as was held in *Rossi* v. *Caire,* 174 Cal. 74, 81, [161 Pac. 1161], a previous action involving questions arising out of this very forfeiture, the corporation having ceased to exist, it was no longer capable of holding the title to the property formerly belonging to it, or the possession thereof. Much is said in the briefs herein as to the correctness of the statement in *Rossi* v. *Caire, supra,* that upon the forfeiture under such circumstances the property of the corporation vests in the stockholders (subject, of course, to the claims of creditors and the expenses of liquidation), and the right of possession in the former directors as trustees for the settlement of the corporate affairs, it being claimed by respondents that the title to the property vested in such trustees. It is unnecessary, it seems to us, to discuss that question, for we cannot see that it has any substantial bearing here. Assuming purely for the purposes of this decision that the position of respondents is well grounded in this regard, it would nevertheless remain that the former directors would hold the title simply as trustees for the purpose of their statutory trust, with the former stockholders as the sole beneficiaries, subject, of course, to the claims of creditors. Section 10a of the License Tax Act made them simply trustees to settle the affairs of the defunct corporation—trustees in liquidation to conserve its property, discharge its obligations and deliver or account for any residue to the beneficiaries, the former stock-

holders.    While section 10a says that such former directors
are deemed to be the trustees *"of the corporation* and stock-
holders or members of the corporation whose power or right
to do business is forfeited," this does not mean that they are
anything more than "trustees in liquidation," and "they
cannot be allowed or required to perform further functions
in their capacity as a corporation or as directors thereof."
(See *Lewis* v. *Miller & Lux,* 156 Cal. 101, [103 Pac. 496].)
It is plain, in view of our decisions, that upon the death of
this corporation without any existing provision of law for
its rehabilitation, the *corporation* could no longer have any
interest in the property, and those who were its stockholders
at the time of its death were immediately vested with the
right to have its affairs settled by the trustees designated by
the statute for that purpose and the property remaining
after such settlement distributed among them according to
their respective interests.    Such former stockholders immedi-
ately became the beneficiaries of a statutory trust created
*solely* for that purpose.    The former stockholders either had
the equitable title to the property of the former corporation,
subject to a charge in favor of the creditors to be enforced
by the former directors as trustees for that purpose; or they
had a legal title in such property subject to a power in the
trustees to dispose of so much thereof as was necessary to
pay the creditors.    This certainly was the condition at all
times prior to the enactment of the legislation of the year
1913 authorizing a revivor of such corporations as had there-
tofore failed to comply with the requirements of the license
tax law, and whose charters had been forfeited for this rea-
son.    The mere fact that our constitution did not prohibit
the legislature from providing for the remission of such a
forfeiture was altogether immaterial to any question here
involved, if in fact it had not so provided.    And, of course,
the fact that the legislature had consistently at each previous
session for several years made provision for remission of for-
feitures previously had is likewise immaterial.

This being the situation, we are brought to a consideration
of the meaning and effect of this legislation of the year 1913,
and the effect of the proceedings had thereunder with rela-
tion to nonconsenting former stockholders.    Of course, in
view of our constitutional provision relative to the remission
of forfeitures, there can be no doubt that the legislature had

the power to authorize the remission of the forfeiture and the reinstatement of the corporation as a corporation. But it does not follow either that the legislature intended by the legislation of 1913 to allow the rehabilitation of the corporation against the expressed will of former stockholders, who had become vested with the rights to which we have referred, or that so intending it had the constitutional power to impair such rights. Appellants claim that no such intent is apparent in the legislation adopted, and also that the rights of the former stockholders with regard to a complete liquidation of the affairs of the corporation and the distribution of the property were such that, in the absence of acquiescence in an attempted revival of the corporation, they could not be affected.

[3] None of the amendments to the old License Tax Act of 1905, which was repealed in 1913, relative to the relief of corporations whose charters had been forfeited, contained anything indicating how the assent of those formerly comprising the corporation, stockholders, or members, to a revival of the corporation, was to be expressed. It was simply provided that "any corporation which failed to pay . . . may pay," and thereupon "be relieved," etc. We think, however, after much consideration of the very loosely drawn legislation relative to forfeiture of corporation charters for nonpayment of license tax and relief from such forfeiture, that it was the idea of the framers of these relief amendments that the statutory trustees "of the corporation and stockholders or members," who, under the law existing at the time of the death of the corporation, were simply *trustees in liquidation* and nothing else, should represent the former corporation in this matter of revival, and that the assent of this body alone and the payment by it of the tax and penalties would be sufficient to effect a rehabilitation of the corporation. We think also that it is clear that it was contemplated that the rehabilitated corporation should proceed exactly as if no forfeiture had occurred, with all its former powers and owning all the property remaining in the hands of the trustees, subject, of course, to all obligations lawfully incurred by the trustees during the corporation's lapse of life. Doubtless under these amendments, crudely drawn as they are, this would be held to be the situation in any case wherein a former stockholder did not diligently assert his

objection to any revival of the former corporation which would have the effect of destroying his rights under the statutory trust. His consent under such circumstances would be implied, or he would be held estopped to urge that he had not consented. But, as we have seen, there is no question in this case of any lack of diligence on the part of the complaining former stockholders or the assignee of one of them. We are of opinion that the proviso inserted in the amendments of 1909, 1911, and 1913, that such rehabilitation "shall be without prejudice to any action, defense or right which accrued by reason of the original forfeiture," strongly relied on by appellants as showing an intent to save the right of a stockholder to prevent the rehabilitation of the corporation, does not refer to such a right at all. The provision contemplates a rehabilitated corporation, saying "the rehabilitation of a corporation," etc., "shall be without prejudice to," etc., and the whole intended scope thereof undoubtedly was to save such actions, defenses and rights as had accrued in the management of the affairs of the former corporation by the trustees for the benefit of the former stockholders.

[4] We are forced to the conclusion, however, that so construing the rehabilitation provision here involved, its enforcement against a nonconsenting former stockholder who diligently asserted his rights, would be an impairment of a vested right in property prohibited by both state and federal constitutions. In this regard the very able argument of learned counsel for respondents to our minds fails to give sufficient force to certain facts which, in view of our decisions, must be conceded, and which appear to us to make the question a very simple one. We are not dealing here with an unenforced penalty. The judgment of death pronounced by the law on this corporation had been carried into effect. The corporation was dead, and had died without any existing provision of law for its revivification. Taking for the purposes of this decision, the view most favorable to respondent, the legal title to the property of the former corporation had wholly vested in the trustees designated by the statute for the purposes of the trust declared by the statute, which were solely the liquidation of the affairs of the corporation and the distribution of the property remaining among the former stockholders. Subject to the expenses of the trustees and the

payment of creditors, the former stockholders were the sole beneficiaries and the absolute owners in equity of the property. Under all the definitions this was certainly a vested property right. It cannot matter why such penalty of forfeiture of charter was imposed and enforced, or what the obligation to each other of the former stockholders would have been had such penalty not been enforced. The status with relation to the property had been created, and the terms of the trust upon which it was held defined. [5] We do not see how it can be held that the rights of former stockholders under the trust defined by the statute, the right subject to the payment of the former corporation debts and expense of liquidation, to have the property distributed among them, was not a vested property right secure against impairment by subsequent act of the legislature. Much reliance is placed upon the fact that the constitution ever since the amendment of 1908 has impliedly authorized the legislature to provide for the remission of the forfeiture of charters of private corporations. This it does solely by failure to prohibit such action. But the mere fact that the legislature has this power does not authorize it to interfere with vested property rights over the protest of those having such rights, nor does it prevent such rights from absolutely and unconditionally vesting immediately upon the forfeiture without any existing provision of law for rehabilitation. Such vesting was complete prior to the attempted exercise of any such power. The provision does not purport to authorize the accomplishment of any such result as is here claimed for it against the consent of any of those who have become, by reason of the forfeiture, the owners in equity of the property. We would have an entirely different case had there been a statute authorizing remission of forfeiture and rehabilitation of the corporation at the time of the forfeiture of its charter. In that event the vesting of the property rights might well have been held to be upon condition. But there was no such statute, with the result that the former stockholder at once succeeded to vested property rights which cannot be impaired by subsequent legislation. The terms of the trust upon which the property was held by the trustees could not, therefore, be changed to the detriment of the beneficiaries without their consent.

Our conclusion upon this question necessitates a reversal.

The judgment and order appealed from are reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Sloane, J., Lennon, J., Lawlor, J., and Shaw, J., concurred.

Rehearing denied.

All the Justices concurred, except Angellotti, C. J., who was absent.