[Civ. No. 6219. Second Appellate District, Division One.—July 29, 1929.]

SOUTHERN LAND COMPANY (a Corporation), Respondent, v. J. IRVING McKENNA et al., Appellants.

Catherine A. McKenna and J. Irving McKenna for Appellants.

Emmet H. Wilson and Randall J. Hood for Respondent.

HOLLZER, J., *pro tem.*—This is an action to quiet title. Defendants appeal from a decree awarded to plaintiff.

It is difficult to ascertain on what grounds a reversal is sought. Appellants' brief is a mixture of rambling and more or less disconnected narrative and discussion. No particular finding of fact is attacked. No points of law, respecting which it is claimed the trial court erred, are

presented under separate or any headings. In short, appellants have failed to comply with rule VIII of this court, which requires that "the brief must present each point separately *under an appropriate heading,* showing the nature of the question to be presented."

In their original answer filed February 5, 1925, defendants claimed title to the property by adverse possession.

In an amendment to the answer filed more than a year later, and only a few days prior to the trial, the defendants asserted that in July or August, 1918, plaintiff conveyed the property to them, but that said conveyance was never recorded and had been lost.

It was further charged in this later pleading that in September, 1921, and while plaintiff's right to transact business had been suspended for nonpayment of taxes, the defendants obtained another deed to the same property, which later conveyance was signed "W. S. Brush, Geo. B. Raum, all of the surviving members of the last named board of directors of the Southern Land Co. (a defunct corporation), as the trustees of and all of the stockholders of said defunct corporation."

Defendants also alleged that while the plaintiff's rights were suspended another corporation, in no way connected with the latter, but having the same name as the plaintiff, was organized under the laws of this state, and that plaintiff's subsequent attempted revivor was void and that it had no capacity to sue.

Defendants further pleaded that plaintiff's cause of action was barred by the provisions of section 341, subdivision 3, of the Code of Civil Procedure.

The record on this appeal was prepared under what is commonly known as the alternative method, and the reporter's transcript is rather voluminous. The appellants' brief, however, contains only a small portion of the evidence presented in the court below.

At the trial it was stipulated that one George E. Hart had been the owner of the property in question up to 1916, and that in the latter year he conveyed the property to the plaintiff. Under this state of the record the burden rested upon the defendants to establish by a preponderance of the evidence that the plaintiff had lost title to the property.

■ The evidence respecting the alleged lost deed, by which it was claimed plaintiff had transferred to defendants the property in question, was not convincing, to say the least.

At the time of the trial plaintiff's officers, who were supposed to have executed this conveyance, were dead. Defendants were the only persons who testified that such a deed had ever been in existence. However, they admitted that in obtaining the instrument, claimed to have been subsequently lost, they had dealt with one Hart because they considered him the real owner of the property, and also acknowledged that after Hart's death they had secured from his heirs a quitclaim deed to the same property. Their recollection as to who executed the document in question was uncertain. Furthermore, it appeared that at the time they were dealing with Hart the defendants did not know who was the owner of the property. Likewise witnesses called on behalf of the plaintiff testified that after the commencement of the action at bar one of the defendants had admitted that the deal whereby the latter were to obtain a conveyance from the plaintiff had fallen through. One of the plaintiff's directors testified that he had never heard of any such deed, and also that during the year following its alleged delivery to the defendants he had been employed by the plaintiff to sell the property. These facts, and also the absence of any record of such conveyance—both of the defendants being attorneys naturally understood the importance of having the same recorded—and the further fact that defendants' testimony that they had paid the taxes on this property for the years 1918, 1919 and 1920 had been disproved, all these circumstances were sufficient to create a serious doubt as to whether such a conveyance had ever been made.

■ The deed bearing date September, 1921, introduced by defendants, was executed, not by the plaintiff, but by certain alleged trustees thereof, and at a time when plaintiff's right to transact business was suspended for failure to pay taxes. Such failure, however, did not cause a forfeiture of plaintiff's corporate existence; nor did its assets become vested in any trustees. This instrument, therefore, did not convey any of plaintiff's interest in the property. (*Usher* v. *Henkel,* 205 Cal. 413 [271 Pac. 494].)

The case of *Clark* v. *San Francisco*, 53 Cal. 311, cited by defendants, is not in point. That decision merely holds that *where a corporation has been dissolved,* the directors are the trustees for the stockholders and have the exclusive power to settle its affairs and, in the exercise of that authority, may convey its property. In the action at bar, however, as already pointed out, the plaintiff's failure to pay taxes did not cause it to become dissolved, and there were no trustees who were authorized to transfer its property or otherwise act in its behalf.

■ The lower court therefore was fully warranted in holding that the defense based upon an alleged conveyance from plaintiff to the defendants had not been established. In the light of the record as heretofore outlined, its finding in that regard cannot be disturbed on appeal.

Whether defendants have abandoned the claim of adverse possession is not altogether clear. In the court below, during the early portion of the trial, while arguing objections to the introduction in evidence of a certificate of redemption issued by the county auditor to Feely, the following took place:

"Mrs. McKenna: If your Honor please, I object to that as incompetent, irrelevant and immaterial, because in the first instance here this plaintiff was not concerned as to whether the taxes were paid or not; the payment of taxes is not a material matter.

"Mr. Wilson: It certainly is so far as it bears upon the question of adverse possession.

"Mr. McKenna: *We are not relying on adverse possession. I am relying on a deed executed by this corporation.*

"The Court: Are you not relying on adverse possession?

"A. Only to show we had a deed and went into possession of it and exercised the ownership of it, and then too, if your Honor please, I have here receipts and I know I personally paid those taxes and I know the property was assessed.

"The Court: Then it goes into a question of contradictory evidence." (Reporter's Trans., pp. 74, 75.)

■ Assuming, however, that the claim of ownership under alleged adverse possession is still one of the issues to be decided, the evidence establishes quite clearly that the defendants did not pay the taxes for five years continuously

next preceding the commencement of the action. Although both of the defendants testified that they personally had paid all of the taxes continuously from 1912 down to the date of the suit, documentary evidence introduced by the plaintiff, and consisting of a portion of the records of the county auditor, showed that the taxes for the years 1918, 1919 and 1920 had been allowed to become delinquent. These records further proved that the property had been sold on account of such delinquent taxes, and that on November 14, 1921, the property had been redeemed by one Frank E. Feely, who, on the last-mentioned date, paid the taxes covering those years, together with the accrued interest and penalties thereon. The complaint having been filed on January 26, 1925, payment of the taxes for a period of five consecutive years, beginning with 1920, constituted one of the prerequisites to proving ownership acquired by adverse possession. Accordingly, since it appeared that the defendants had not paid the taxes for the year 1920, the lower court very properly found that the defense of adverse possession had not been sustained.

At the trial defendants offered to prove that in 1924 one Boswell and one Usher had bought stock in the plaintiff corporation, and thereafter had caused it to be revived for the purpose of bringing the present suit and similar actions; also that these men were not stockholders at the time of plaintiff's suspension, that they were the real parties in interest in the present case, and that they caused the plaintiff to be revived with knowledge that neither the plaintiff nor its stockholders claimed any interest in the property. The lower court sustained an objection to this offer of proof. Appellants claim that this was error.

It is a sufficient answer to this contention to point out that the law in force at the time plaintiff's corporate rights were suspended, and likewise applicable at the time of its revivor, expressly provided that "all corporate powers, rights and privileges, suspended or forfeited under the provisions of this act, may be revived and restored to full force and effect upon application therefor by any *stockholder* or creditor thereof, and upon payment of all accrued taxes," etc. (Sec. 12, chap. 215, Stats. 1917, p. 377, and sec. 12, chap. 414, Stats. 1921, p. 606.)

 The defendants also offered in evidence certain records from the county clerk's office showing that on November 13, 1922, and while plaintiff's corporate rights, powers and privileges were suspended for nonpayment of taxes, articles of incorporation had been filed by a company having the same name as that of the plaintiff, which company was in no way connected with the latter. The trial court sustained an objection to the admission of this evidence.

 In addition, the defendants objected to the introduction in evidence of the certificate of revivor issued to the plaintiff by the state controller on December 26, 1924. This objection the trial court overruled.

Defendants contend that these rulings were erroneous. Their argument is that, since another corporation had been organized under the same name as that held by plaintiff during the period of the latter's suspension, the certificate of revivor issued by the state controller to the plaintiff was void and of no effect. In support of their argument appellants cite the cases of *Rossi* v. *Caire*, 186 Cal. 544 [199 Pac. 1042], and *Ransome-Crummey Co.* v. *Superior Court*, 188 Cal. 396 [205 Pac. 446].

Neither of these authorities supports appellant's contention. In the case of *Rossi* v. *Caire*, *supra*, the court was construing the statute of 1905 (Stats. 1905, p. 493), and the amendments thereof, all of which, however, had been repealed prior to the incorporation of the plaintiff. On the other hand, that law was superseded by the act of 1915 (Stats. 1915, p. 422), as amended by the act of 1917 (chap. 215, Stats. 1917, p. 371), and as further amended by the act of 1921 (chap. 414, Stats. 1921, p. 606).

In *Ransome-Crummey Co.* v. *Superior Court*, *supra*, the court held that under the terms of these amendments the penalty for nonpayment of license and franchise taxes by a corporation had been changed, and that the result of such nonpayment was no longer a forfeiture of its charter and consequent dissolution of the corporation, but only a suspension of its rights, powers and privileges, with the provision of revivor. As observed by the court in the last-mentioned case, at page 397 of 188 Cal. [205 Pac. 448]:

"The distinction between the position of a corporation after failure to pay its license and franchise taxes under the former

and under the present law was pointed out in *Rossi* v. *Caire*, 186 Cal. 544 [199 Pac. 1042], where the status of such a corporation was considered. The court in that case said: 'The corporation (under the former laws) simply ceased to exist, just exactly as in the case of a forfeiture for cause by judicial decree, without any existing provision of law for rehabilitation as a corporation. It was not a case simply of suspended animation, as under the present license tax law, but one of absolute death.'

"It follows that petitioner did not cease to exist during the period of suspended animation."

The only restriction against the controller issuing a certificate of revivor to a corporation which has paid all of the delinquent taxes and accrued penalties is to be found in section 14 of the act of 1917 (chap. 215, Stats. 1917, p. 378), as amended in 1921 (chap. 497, Stats. 1921, p. 766). Section 14 as thus amended provides, in substance, that "any corporation which has heretofore failed to pay any license tax and penalty imposed under the provisions of chapter three hundred eighty-six, Statutes *1905*, and *amendments thereof*, or under chapter one hundred ninety, Statutes of *1915*, and for such nonpayment suffered a forfeiture of the charter of such corporation or of the right to do business in this state may be relieved of such forfeiture or may be restored to its right to do business in this state upon making application therefor" and paying certain taxes and penalties. "In case the name of any corporation which has suffered the forfeiture prescribed by either of *said acts*" above mentioned, "has been adopted by any other corporation since the date of said forfeiture," then such reviving corporation shall be entitled to a certificate of revivor pursuant to the terms of *said* section "only upon the adoption by such corporation seeking revivor of a new name." Such reviving corporation shall have the right to use its former name or take such new name "only upon filing an application therefor with the secretary of state."

On the other hand, section 12 of the same act declares in substance, that "all corporate powers, rights and privileges suspended or forfeited under the provisions of *this act* may be revived" upon application therefor by any stockholder or creditor thereof and upon payment of cer-

tain taxes and penalties to the state. Upon the payment of such moneys, "the *state controller shall issue a certificate under his seal evidencing such payment and restoration.*"

It will be observed that, although both of these sections deal with the subject matter of the conditions or procedure under which a corporation which has suffered a forfeiture or suspension by reason of failure to pay taxes may be relieved of such forfeiture or suspension, each covers a different class of cases.

Section 14 defines the procedure with respect to a "corporation which has heretofore failed to pay any license tax and penalty imposed under the provisions of chapter *three hundred eighty-six,* Statutes *1905,* and *amendments thereof,* or under chapter *one hundred ninety,* Statutes of *1915.*" As to any such corporation, it is provided that "in case the name of any corporation which has suffered the forfeiture prescribed by either of *said acts" above mentioned* "has been adopted by any other corporation since the date of said forfeiture," then such reviving corporation shall be entitled to a certificate of revivor "only upon the adoption by such corporation seeking revivor of a new name."

Section 12, however, lays down the procedure whereby "all corporate powers, rights and privileges, suspended or forfeited under the provisions of *this* act (Stats. 1917, p. 371, chap. 215) may be revived." As to such a corporation there is no provision that such suspension or forfeiture in any way jeopardizes the corporation's right to the use of its name. The payment of the taxes and penalties specified in that section is the sole prerequisite to a restoration to corporate capacity upon the application of any stockholder or creditor.

Since its suspension occurred in March, 1921, plaintiff does not come within the classification of a "corporation which has heretofore failed to pay any license tax and penalty imposed under the provisions of chapter three hundred eighty-six, Statutes *1905,* and amendments thereof, or under chapter one hundred ninety, Statutes of *1915.*"

For the same reason plaintiff must be regarded as a corporation, the powers, rights and privileges of which were suspended under the condition defined by section 12

of the act of 1917 (Stats. 1917, p. 377). With respect to the restoration of such a .corporation to its rights, powers and privileges, that section empowers the state controller to issue the certificate of revivor merely upon payment of certain taxes and penalties.

█ Accordingly, we conclude that a corporation whose rights, powers and privileges have been suspended for nonpayment of taxes subsequent to the date on ؚwhich chapter 215, Statutes of 1917, became effective, may not be deprived of the use of its corporate name through the adoption of a similar name by another corporation organized in this state during the period of such suspension. In other words, a corporation whose rights, powers and privileges have been thus suspended, upon complying with the provisions of section 12 of said act, is entitled to a certificate of revivor from the state controller, regardless of the fact that during the period of its suspension another corporation has been organized in this state under a similar name.

█ The remaining contention advanced by appellants may be briefly disposed of. In the amendment to their answer, defendants pleaded that this action was barred by the provisions of section 341, subdivision 3, of the Code of Civil Procedure. The latter subdivision bars, within six months, an action to set aside or invalidate any action taken or performed by a majority of the *trustees* of any corporation heretofore, or hereafter *dissolved* by operation of law, including the revivor of any such corporation. As heretofore pointed out, plaintiff's failure to pay taxes, did not cause it to become dissolved, nor did it have any trustees who could act in its behalf. There is no merit therefore, in this point.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 26, 1929.

All the Justices present concurred.