[Civ. No. 13413. Second Dist., Div. Two. Mar. 18, 1942.]

GRACELAND (a Corporation) et al., Appellants, v. BYRON PEEBLER et al., Respondents.

J. M. Danziger and H. A. Andrews in pro. per. for Appellants.

Roland Maxwell for Respondents.

HANSON, J. pro tem.— The sole question presented for decision is whether the surviving directors of a California corporation, whose charter was suspended in 1926 for nonpayment of its franchise tax, may now maintain an action in behalf of its stockholders and creditors to quiet title to realty. The trial court was of the view that the action could not be maintained and so sustained a motion of the defendants for judgment on the pleadings. In so holding we think the court was correct.

While the appellant directors concede that neither the corporation nor they, in its behalf, may maintain the action, as the statutes applicable bar a corporation which has failed to make timely payment of its franchise tax from exercising any corporate powers, rights or privileges (with exceptions not here material), they contend they may do so as its surviving directors. Their right so to do is rested upon the theory that the second license tax act, enacted in 1917—the provisions of which are here controlling—was, like the first license tax act of 1905, a "forfeiture" act and not a "suspension" act. Accordingly, they argue that when the corporation in 1926 failed to pay its franchise tax its charter was forfeited and not merely suspended, and that this involved a dissolution of the corporation. If their premise that the corporation was dissolved is correct it follows, as they contend, that Civil Code section 400 as it then existed—and as it is continued in substance in Civil Code section 399a—is sufficiently expansive to vest them with the authority for

which they contend. However, we think that the premise is false and that the cases upon which they rely show it to be false.

As originally enacted in 1905 the first license tax act not only specifically provided that a domestic corporation's charter should be forfeited for nonpayment of its license or franchise tax, but it made no provision for a revivor thereof or for settling the affairs or disposing of the property of the corporation. On the following day the legislature cured this defect in part by amending Civil Code section 400 so as to give the surviving directors the power to settle the affairs of the corporation and to dispose of its property. But no provision was made to enable a revivor of the corporation if it chose to pay the tax liability which had accrued against it. In 1907 the legislature not only provided for such a revivor but amended the statute (section 10a) so as to give express power to the directors to settle the corporation's affairs and dispose of the property for the stockholders but not for the creditors. However, the rights of the latter were similarly provided for by Civil Code section 400. (*Hanson* v. *Choynski,* 180 Cal. 275 [180 Pac. 816].) This being the effect of the 1905 act, it remains only to determine whether the second license tax act, passed in 1917, changed the situation so as to result merely in the suspension of a corporation's activities under its charter rather than a forfeiture of its rights.

In arguing that no change in this respect was effectuated by the second license tax act appellants point to the fact that section 9 contains the phrase "suspended or forfeited corporation," and so they say the words "suspended" and "forfeited" are used interchangeably. But it is plain from a reading of the statute as a whole that the words were not used interchangeably. The language of the statute is that the corporate rights, privileges and powers of every *domestic* corporation which fails to pay its tax shall be *suspended,* and that the rights and privileges of every *foreign* corporation which fails to pay its tax shall be *forfeited.* Hence the phrase "forfeited," as used in section 9, refers alone to foreign corporations, and "suspended" to domestic corporations. Nowhere in the act is there any language indicating that the charter of a domestic corporation should be forfeited for nonpayment of its franchise tax. Not only does "suspension" not involve a dissolution of the corporation, but the second license tax act under which the instant corporation was sus-

pended for nonpayment of its franchise tax specifically provides that such a corporation shall not be dissolved by any court until it has paid all taxes and penalties due under the act. Necessarily there could be no voluntary dissolution, as proceedings looking thereto would involve the exercise of corporate rights, privileges and powers. Accordingly, Civil Code section 400, as it existed at the time of the suspension, upon which the directors here rely for their right to maintain the action, is not applicable, as it deals only with corporations which are dissolved.

Cases cited by appellants, such as *Rossi* v. *Caire,* 186 Cal. 544 [199 Pac. 1042], *Anthony* v. *Janssen,* 183 Cal. 329 [191 Pac. 538], *Brandon* v. *Umpqua Lumber etc. Co.,* 166 Cal. 322 [136 Pac. 62], and *Hanson* v. *Choynski,* 180 Cal. 275 [180 Pac. 816], involve the first license tax act of 1905, while *Crossman* v. *Vivienda Water Co.,* 150 Cal. 575 [89 Pac. 335], *Havemeyer* v. *Superior Court,* 84 Cal. 327 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627], and *Henderson* v. *Palmer Union Oil Co.,* 29 Cal. App. 451 [156 Pac. 65], involve merely the effect of Civil Code section 400 prior to the passage of the second license tax act in 1917. None of them contains a single ruling favoring the contention here made by appellants. On the contrary, such of the cases as touch on the point here involved interpret the 1917 act as we do. Moreover, another case not cited by appellants, *Ransome-Crummey Co.* v. *Superior Court,* 188 Cal. 393 [205 Pac. 446], while it does not touch directly on some of the points raised by appellants here, supports our holding. See, also, *Smith* v. *Lewis,* 211 Cal. 294 [295 Pac. 37].

For the reasons indicated the judgment is affirmed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.