NATHAN GARZO et al., Appellants, *v.* MAID OF THE MIST STEAM-BOAT COMPANY et al., Respondents, et al., Defendants.

Fourth Department, July 11, 1951.

*Adrian Block* and *John L. Beyer, Jr.,* for appellants.

*Paul P. Cohen, William G. Shoemaker, Jr.,* and *Robert O. Swados* for respondents.

*Per Curiam.* The question here presented concerns the revival of the corporate existence of a corporation, incorporated in the year 1892 for the duration of fifty years, the term of which was not extended prior to the expiration of the fifty years, but which regardless of that fact, continued to do business to and including the year 1947 at which time it filed a certificate of revival pursuant to the provisions of section 49 of the General Corporation Law, as added by chapter 591 of the Laws of 1944, and the rights of the minority stockholders to a dissolution of the corporation, or, in the alternative, an appraisal of their stock.

Prior to February 20, 1942, the date when its corporate existence expired pursuant to its charter, the corporation, by appropriate action of the holders of a majority of the stock could have filed a certificate extending its term of existence. After that date and prior to the effective date of section 49, April 6, 1944, there was no general statute under which the corporation was authorized to revive its corporate existence. The usual procedure invoked in cases of this kind was to procure a special act of the Legislature to revive and extend the corporate existence of the particular corporation. We find no reported cases in which the authority of the Legislature to pass such a special act has been questioned.

After study by the Law Revision Commission, it recommended to the 1943 Legislature for passage a bill to permit a corporation to file a certificate of revival after its corporate existence had expired. (1943 Report of N. Y. Law Revision Commission, p. 351). This bill passed both houses of the Legislature but was vetoed by the Governor, who in his veto message, called attention to certain defects and asked the Legislature to study the question further. The commission made a further study and made some changes in the bill and again made its recommendation to the Legislature. (1944 Report of N. Y. Law Revision Commission, p. 21). The bill as amended passed both houses of the Legislature and was signed by the Governor, who, in his

approval message called to the attention of the Legislature that there was no provision in the act for the appraisal of the stock of a dissenting stockholder and asked the Legislature to give that subject further study. In spite of this request, section 49 has not been amended.

Appellants urge: (1) That the statute was not intended to apply to corporations whose existence had expired prior to the passage of the act; (2) That if it was so intended it was unconstitutional as affecting the vested rights of minority stockholders; (3) That if it is held to be retroactive in effect, there was an implied statutory right to the minority of having their stock appraised; (4) That in any event, they had an equitable right to such an appraisal.

We think that the language of the statute and the report of the commission clearly negatives their first contention, and that legislative history definitely answers the third. The Governor pointed out that no appraisal was given and the statute has not been amended. Nothing further need be said on those points. We now come to the question of the power of the Legislature to enact the statute and to make it retroactive. As was pointed out in *Lord* v. *Equitable Life Assur. Soc.* (194 N. Y. 212) the decision of the United States Supreme Court in *Trustees of Dartmouth College* v. *Woodward* (4 Wheat. [U. S.] 518) in which it was held that a corporate charter was a contract which could not be modified or altered in any material respect without the consent of the corporation, caused the Legislature of this State to enact a statute in 1827 which provided that the charter of any corporation thereafter granted " shall be subject to alteration, suspension and repeal, in the discretion of the legislature.". (Rev. Stat. of N. Y., part I, ch. XVIII, tit. III, § 8.) This reserved power of the Legislature was incorporated in the State Constitution in 1846 and is now contained in section 1 of article X in this language: " All general laws and special acts passed pursuant to this section may be altered from time to time or repealed."

The question then, is whether or not the act of the Legislature providing for the filing of a certificate of revival of a corporation whose term of existence had expired comes within the reserved power of the Legislature. In the absence of New York authority directly in point, we have considered the decisions in *Rossi* v. *Caire* (186 Cal. 544) holding that a similar act of the California Legislature was not within the " reserved power ", and *Stott* v. *Stott Realty Co.* (288 Mich. 35) which held that the

Michigan Legislature might "by retroactive statutes, ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality." (P. 46.) And further: "A stockholder has no vested right to have the charter declared void for nonpayment of the fees on the ground that the statute under which it was organized could not thereafter be amended to provide otherwise. Under the reserved power the State can revive the corporation." (P. 47.)

We think the decision in the Michigan case may well be applied to the statute under consideration here. We find nothing in the decisions in *Davison* v. *Parke, Austin & Lipscomb* (285 N. Y. 500); *Anderson* v. *International Minerals & Chemical Corp.* (295 N. Y. 343); or *Albrect, Maguire & Co.*, v. *General Plastics, Inc.* (256 App. Div. 134 affd. 280 N. Y. 840) which requires a contrary holding. Those cases turned on the interpretation of the particular statute under examination. In fact, Judge DESMOND said in the *Davison* case (p. 509): "The judicial problem is not whether a particular preferential right is vested or not, but rather what was the legislative intent as to it." We therefore reach the conclusion that the power reserved to the Legislature by the constitutional provision is superior to the rights of these stockholders to require a dissolution of the corporation, and that the Legislature did not exceed its power when it enacted section 49 of the General Corporation Law and made it applicable to a corporation whose term of existence had expired.

We now come to the final question of the right of the minority stockholders to equitable relief by having a determination that there should be an appraisal of their stock. We are unable to determine on this record that these plaintiffs have established facts entitling them to equitable relief. There is no evidence of fraud or bad faith on the part of the majority stockholders. Dividends have been declared and paid regularly on all of the stock, and there does not appear to be any showing that these plaintiffs have lost any valuable rights. From the year 1942 to the year 1947 plaintiffs were content to accept their dividends and to some degree participate as stockholders in the affairs of the corporation. It was only when the revival proceedings were instituted that they became aware of the fact that the corporate charter had expired by lapse of time. The trial court said: "Assuming that such equitable power does exist, the facts here do not present a proper case to warrant the court

in making such a direction.'' We find no reason to reverse his decision.

The judgment should be affirmed with costs.

All concur, except TAYLOR, P. J., not voting. Present — TAYLOR, P. J., McCURN, KIMBALL, PIPER, and WHEELER, JJ.

Judgment affirmed with costs.