[No. B140111. Second Dist., Div. Five. Apr. 3, 2001.]

BRUCE BOYER et al., Plaintiffs and Appellants, v.
BILL JONES, as Secretary of State, etc., Defendant and Respondent;
ED LEWIS et al., Real Parties in Interest and Respondent.

**COUNSEL**

Wallace Grantham & Schwartz and George Wallace for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Manuel M. Medeiros, Assistant Attorney General, Andrea Lynn Hoch and Christopher C. Foley, Deputy Attorneys General, for Defendant and Respondent.

Ed Lewis and Debra Lewis, in pro. per., for Real Parties in Interest and Respondent.

**OPINION**

**ARMSTRONG, J.**—This case raises a single legal question concerning corporate names: may the name of a suspended corporation be reserved and

adopted by another corporation? The Secretary of State says yes. Appellants, whose corporate name was taken during a period of suspension, say no. We agree with the Secretary of State.

## FACTS

Appellants Bruce and Marian Boyer incorporated Lone Star Security, Inc., in 1993. In July of 1996, the Secretary of State (Secretary) suspended the corporation for failure to file annual statements (Corp. Code, § 1502) in 1994 and 1995. Apparently, the corporation also failed to file tax returns, another ground for suspension. (Rev. & Tax. Code, § 23305.1.) Although appellants acknowledge that the Secretary's records indicate that all necessary notices were sent, they declared that they did not realize that the corporation was suspended until August of 1999, during litigation with a former employee, Ed Lewis, real party in interest here.

After the communication from Lewis, appellants filed their annual statements and tax returns and paid all applicable penalties and sought a certificate of revivor from the Franchise Tax Board. However, when Lewis discovered the suspension, he did more than inform appellants that their corporation was suspended and lacked the capacity to sue or defend. He reserved the name Lone Star Security, Inc., with the Secretary. Appellants' application for a certificate of revivor was denied by the Franchise Tax Board on the ground that the name "Lone Star Security, Inc." was not available in that it had been reserved by Ed Lewis. Shortly thereafter, Ed Lewis (along with Debra Lewis, also a real party in interest here) filed articles of incorporation under the name "Lone Star Security, Inc."

Appellants filed a petition for writ of mandate, seeking to have the trial court order the Secretary of State to restore the name "Lone Star Security, Inc." to them, revoke Ed and Debra Lewis's articles of incorporation and require them to seek another corporate name, and notify the Franchise Tax Board that the name was available, so that the revival of the suspended corporation could be completed. The trial court denied the petition.

### Discussion

Resolution of the question before us turns on the interpretation of Corporations Code section 201, on corporate names, and Revenue and Taxation Code section 23305a, on revival of suspended corporations. ■ Since this is question of statutory interpretation, we engage in an independent review. (*People v. Duz-Mor Diagnostic Laboratory, Inc.* (1998) 68 Cal.App.4th 654, 660 [80 Cal.Rptr.2d 419].)

Corporations Code section 201 governs reservation or adoption of a corporate name. Under Corporations Code section 201, subdivision (c), an applicant for articles of incorporation may reserve from the Secretary of State any name which is not prohibited by subdivision (b) of that section.

Corporations Code section 201, subdivision (b)—the critical section—provides that "The Secretary of State shall not file articles which set forth a name which is . . . the same as, or resembles so closely as to tend to deceive, the name of a domestic corporation . . . or a name which is under reservation for another corporation . . . except that a corporation may adopt a name that is substantially the same as an existing domestic corporation . . . upon proof of consent by . . . corporation and a finding by the Secretary of State that under the circumstances the public is not likely to be misled."[1]

Under the Corporations Code and the Revenue and Taxation Code, corporations which have been suspended for failure to file annual statements or tax returns may remedy those deficits, then apply to the Franchise Tax Board for a certificate of revivor. (Corp. Code, § 2205, subd. (d); Rev. & Tax. Code, § 23305.) However, Revenue and Taxation Code section 23305a provides that before the Franchise Tax Board issues a certificate of revivor, "it shall obtain from the Secretary of State an endorsement upon the application of the fact that the name of the taxpayer then meets the requirements of subdivision (b) of Section 201 of the Corporations Code in the case of a domestic taxpayer . . . ."

Thus, before the Franchise Tax Board can issue a certificate of revivor, it must ascertain that the corporation seeking revivor is not doing so under a name which is, or too closely resembles, the name of a domestic corporation or a name which is under reservation, unless consent had been obtained and the Secretary has found that the public will not be misled.

---

[1]In full, that subdivision provides that "The Secretary of State shall not file articles which set forth a name which is likely to mislead the public or which is the same as, or resembles so closely as to tend to deceive, the name of a domestic corporation, the name of a foreign corporation which is authorized to transact intrastate business or has registered its name pursuant to Section 2101, a name which a foreign corporation has assumed under subdivision (b) of Section 2106, a name which will become the record name of a domestic or foreign corporation upon the effective date of a filed corporate instrument where there is a delayed effective date pursuant to subdivision (c) of Section 110 or subdivision (c) of Section 5008, or a name which is under reservation for another corporation pursuant to this section, Section 5122, Section 7122, or Section 9122, except that a corporation may adopt a name that is substantially the same as an existing domestic corporation or foreign corporation which is authorized to transact intrastate business or has registered its name pursuant to Section 2101, upon proof of consent by such domestic or foreign corporation and a finding by the Secretary of State that under the circumstances the public is not likely to be misled. [¶] The use by a corporation of a name in violation of this section may be enjoined notwithstanding the filing of its articles by the Secretary of State."

■ Appellants' argument is that a suspended corporation is a "domestic corporation" as that term in used in Corporations Code section 201, subdivision (b). Thus, they argue, during the period of suspension, the name Lone Star Security, Inc. was not available for reservation by Ed and Debra Lewis, and the Secretary was prohibited from filing articles of incorporation for the Lewises under that name.

In support of their argument, appellants cite Corporations Code section 200, subdivision (c), which provides that "The corporate existence begins upon the filing of the articles and continues perpetually, unless otherwise expressly provided by law or in the articles," and the differences between a suspended corporation and a dissolved corporation. (See Rev. & Tax. Code, §§ 23301, 23305; Corp. Code, §§ 2205, 1801; *Graceland v. Peebler* (1942) 50 Cal.App.2d 545, 547 [123 P.2d 527].) They also cite cases that hold that "the purpose of section 23301 of the Revenue and Taxation Code [suspension of a domestic corporation which fails to pay taxes] is to put pressure on the delinquent corporation to pay its taxes, and that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities." (*Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1366 [64 Cal.Rptr.2d 4].)

We do not believe that appellants' arguments address the critical issue. It is true that a suspended corporation continues to have some corporate existence, and that there are distinctions between a suspended corporation and one which has been dissolved. However, the law is clear that "Except for filing an application for tax-exempt status or amending the articles of incorporation to change the corporate name, a suspended corporation is disqualified from exercising any right, power or privilege." (*Timberline, Inc. v. Jaisinghani, supra*, 54 Cal.App.4th at p. 1365; Rev. & Tax. Code, § 23301.)

We apply the familiar rules of statutory construction to the statutory scheme, construing all provisions in context and in light of the entire scheme, harmonizing provisions relating to the same subject matter, and choosing the more reasonable of any alternative interpretations. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) When these rules are followed, we find that the right, power, or privilege to hold a corporate name and prevent another from adopting that name is not exempted from the disqualification of the exercise of rights, powers, and privileges that affects a suspended corporation.

Before we delve into that analysis, we consider the legislative history of Revenue and Taxation Code section 23305a, which the Secretary finds

determinative. As the Secretary argues, prior to 1929, that law (not designated as Rev. and Tax. Code, § 23305a until 1949) provided that a suspended corporation retained the right to use of its name. (*Southern Land Co. v. McKenna* (1929) 100 Cal.App. 152 [280 P. 144].) As amended by the Statutes of 1929, the law was to the contrary, and specifically provided that a corporate name could be reserved or adopted during a period of suspension.[2] (Stats. 1929, ch. 13 § 33, p. 34.) However, the law was amended again in 1931,[3] and afterwards. In 1979, it was put it into what was essentially its current form. Now, it has no explicit provision requiring a suspended corporation to adopt a new name if its name has been taken during the period of suspension. Thus, we cannot agree with the Secretary that the legislative history of the statute is determinative.

However, we do agree with the Secretary that the "exception" provision of Corporations Code section 201, subdivision (b) answers the question before us. Under that clause, "a corporation may adopt a name that is substantially the same as an existing domestic corporation . . . upon proof of consent by such . . . corporation and a finding by the Secretary of State that under the circumstances the public is not likely to be misled." As the Secretary of State argues, a suspended corporation cannot give such consent. Thus, the statute can only mean that no consent is needed when the name under consideration is that of a suspended corporation.

Further, one of the few powers the law specifically reserves to a suspended corporation is the power to amend its articles to set forth a new name. (Rev. & Tax. Code, § 23301.) This too suggests that a corporation can lose the right to its name during a period of suspension, necessitating a name change before revivor.

We find this construction the most reasonable one. Under appellants' theory, a name could be off limits to new corporations for long periods—perhaps forever—if it was once granted to a corporation, which ceased to

---

[2]Under the 1929 amendments, the law provided that a corporation seeking revivor would have to adopt a new name "[i]n case any corporation has adopted subsequent to such suspension or forfeiture any name so closely resembling the name of such reviving corporation as will tend to deceive." (Stats. 1929, ch. 13, § 33, p. 34.)

[3]Under the 1931 amendments, the law provided that before a certificate of revivor was issued, the Secretary had to endorse on the application the statement that the name of the reviving corporation "is not one which is likely to mislead the public or which is the same as, or resembles so closely as to tend to deceive, the name of a foreign or domestic corporation which is authorized to transact business in this state or a name which is under reservation." The law also provided that if the name did fall into one of the forbidden categories, "the secretary of state shall not endorse such statement upon such application until the corporation therein named, if it be a domestic corporation, files in his office amended articles of incorporation changing its name. . . ." (Stats. 1931, ch. 1066, § 7, p. 2229.)

exist de facto, if not de jure, and simply never bothered to dissolve or revive. In contrast, appellants' public policy arguments rest on the contention that unless a suspended corporation keeps the right to its name, the Secretary has no power to prevent misuse of the naming process by scavengers seeking to hold the names of suspended corporations for ransom, or by suspended corporations, which, appellants theorize, could file new articles of incorporation under their old names and achieve a kind of backdoor revivor without the payment of taxes and penalties. We see little danger. Corporations Code section 201, subdivision (b), prohibits the Secretary from filing articles which "set forth a name which is likely to mislead the public." Further, the Secretary informs us that his office has followed its current practice concerning the names of suspended corporations since 1929. Apparently, there has been no wide-scale evasion of the revivor laws.

Finally, we find no comfort for appellants in their notice argument. Appellants argue that a corporate name is corporate property, and that they were thus entitled to notice before the name was taken by the governmental action of accepting a reservation of the name by another. The problem with this argument is the facts do not show that the government failed to give notice. Appellants' petition states that the Secretary's records reflect that notice of the suspension was sent to appellants. Appellants' argument is, at best, that they did not realize that under the law, suspension placed their continued entitlement to the corporate name at risk. That is simply not a due process violation.

### Disposition

The judgment is affirmed.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 11, 2001.