ST. MARTIN STATE BANK, RESPONDENT, v. STEFFES, APPELLANT.

(No. 6,634.)

(Submitted June 23, 1930.  Decided July 18, 1930.)

[290 Pac. 259.]

*Mr. C. J. Dousman,* for Appellant, submitted a brief and argued the cause orally.

*Mr. D. R. Young,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The St. Martin State Bank of Roscoe, Minnesota, brought action to recover from the defendant, Joseph M. Steffes, on a promissory note of which, it is alleged, he was a maker. Defendant denied signing the note, but, on the sole issue joined, a jury found in favor of plaintiff, and judgment was duly entered in its favor. Defendant moved for a new trial; the motion was overruled; and defendant appealed from the judgment.

The facts brought out on the trial are substantially as follows: On November 8, 1919, one Elmer W. River was in-

debted to the Plevna State Bank in the sum of $1,085, which he was unable to pay; V. S. Himsl, cashier, agreed to renewal, provided this defendant would sign the renewal note, which defendant agreed to do. Himsl was agent for several Minnesota banks for the loaning of money in his territory, and paid the River notes to Plevna Bank from funds of the Meire Grove Bank, making it the payee of the note signed by River and Steffes. This note was dated November 8, 1919, and payable one year thereafter. On October 30, 1920, the note remaining unpaid, Himsl satisfied it from funds of a second of his principals, this plaintiff, and forwarded to it a note dated November 8, 1920, for $1,085, payable one year after date, and on which the names of Elmer W. River and Joseph M. Steffes appeared as the makers. Himsl testified that he delivered the old note to either River or Steffes. The new note was received by, and entered in the books of, the plaintiff bank, but on August 30, 1921, the bank was burglarized, and this note, with others, stolen; it was never recovered.

On September 15, 1921, Himsl notified defendant that River had lost his crop and had notified the writer that he would not be able to pay anything on the note, and that the bank examiner "instructed us to insist that you pay up this note, with interest which amounts to $1,325." It will be noted that this was before the 1920 note became due and the amount of principal and interest would be that figured on the 1919 note. Himsl explained this notice by saying that River gave a note to the Plevna Bank for the interest on the first note, and that, as Steffes was liable for principal and interest on the first note, he called for the payment of the amount due on it.

In 1923 Himsl was superseded as agent for the Minnesota banks by one B. J. Kuhl, who seems to have done nothing with reference to the note in suit until 1926, when he spoke to defendant about it; defendant neither admitted nor denied liability, but requested Kuhl to come out to the ranch to talk it over. Kuhl thereafter sent several written notices to defendant, but these did not specifically mention a note of date

November 8, 1920. Kuhl testified that, shortly before he placed the note in the hands of counsel for collection, he told defendant of the loss of the note, and then, for the first time, defendant evidenced a disposition to deny liability.

Himsl and one Anna M. Engles, bookkeeper for the Plevna Bank, testified directly that defendant signed the note in suit, and thereafter testified as to the records of their bank concerning it, and an officer of the plaintiff bank testified as to the records of that bank.

Defendant denied on the stand that he ever signed the note in suit, and that, up to shortly before the action was commenced, he thought all references made and notices received were based on the 1919 note. Defendant and his wife testified to a conversation with Himsl, in the presence of Miss Engles, in which Himsl is quoted as saying that it was strange that, while they remembered all about the 1919 note, none of the bank people could remember about the 1920 note, and that he told them "to go home and forget about it."

Both sides having rested, defendant moved for a directed verdict, which motion was denied.

1. The defendant first contends that the court erred in ▮▮ admitting a copy of the note in evidence and in submitting the case to the jury, on the ground that the proof was insufficient to warrant recovery on a lost instrument.

It is a well-recognized principle of law that a person does not lose his right to property or to a debt by losing the instrument containing the statement of the right. The writing itself does not give the right; it is only the primary evidence thereof, and its loss or destruction in no respect changes the obligation of the parties; by the loss the owner's evidence is impaired, but he may still enforce his right by proving the contents of the instrument by secondary evidence. (16 Cal. Jur. 690.) The evidence of the former existence, execution, delivery, loss and contents of a lost instrument should be clear and convincing. (38 C. J. 279.) After proof of loss,

the contents of the instrument may be proved by the introduction of a proved copy of the original, or by oral evidence. (16 Cal. Jur. 697; sec. 10516, Rev. Codes 1921.)

Here the proof of loss is clearly sufficient, and the copy offered was established as a true copy of the original note; it was properly admitted in evidence, if the evidence of the execution of the original was sufficient for submission to the jury.

As to the execution of the note, the witness Himsl was asked: "Do you have personal recollection of that note? A. Yes, sir. Q. And who signed it? A. Yes, sir. Q. And who did sign it? A. Elmer W. River and Joseph M. Steffes." Counsel for defendant insists that the further statements of the witness, particularly on cross-examination, show that he had no personal recollection of the signing by Steffes, and that no foundation was laid for testimony from the records of the bank. While there is some ground for this contention, when the witness testified on cross-examination that he was speaking from the record, he qualified his statement by "as far as the date of the actual signing"; but, when asked, "Do you remember whether he signed the second note in the bank at the counter, in your presence?" His reply was, "In the bank, at the counter, in my presence." "Q. Are you sure of that? A. Yes sir."

Miss Engles testified that she had personal recollection of the note in question, that she knew Steffes' signature, and that the signature on the note was genuine. Further examination cast more of a cloud on her testimony than was shown to exist as to Himsl, but in each instance the argument made goes to the credibility of the witnesses and the weight to be given to their testimony—matters wholly for the jury's determination.

The evidence, if believed by the jurors, was sufficient to establish the execution of the note, and is supported by facts and circumstances shown. Either the defendant signed the renewal note or Himsl forged his signature and perjured

himself on the stand without an apparent motive. On October 30, 1920, he had in his possession a valid and enforceable note, admittedly signed by Steffes, who was solvent, had been disposing of property preparatory to leaving the state, and would have no defense to a demand or action for immediate payment, except that it may be the note was not due until November 8; but, even so, it is hardly conceivable that, without ascertaining whether or not Steffes would pay the note, Himsl would have destroyed its efficacy by substituting a forged note for it. These considerations, however, were for the jury, "as the courts do not proceed upon the hypothesis that men are disposed to be dishonest." (*Texas Land Co.* v. *Walker*, 47 Tex. Civ. App. 543, 105 S. W. 545, 548.)

As supporting defendant's testimony that he did not sign the note, attention is called to the fact that the "Liability Ledger" of the Plevna Bank contained a record of the note as the "River" note, without any suggestion that it was signed by Steffes. No showing was made as to why any entry of a note belonging to the plaintiff bank was made in the "Liability Ledger" of the local bank, and, again, this bit of evidence merely goes to discredit the testimony of Himsl and Miss Engles, and was for the jury's consideration, not ours.

At the close of the case, counsel for defendant moved to strike all of the evidence of Himsl and Miss Engles, "for the reason that such evidence is shown to be incompetent and not based upon knowledge required by law," and now urges that, if this evidence was admissible at all, it was only admissible under the last clause of section 10664, Revised Codes 1921, which provides that a witness may testify from a writing, under certain conditions, though he retains no recollection of the particular facts, "but such evidence must be received with caution." As both witnesses testified in part from memory, as they declared, and neither the trial court nor this court can say that they were not doing so, the ques-

tion of their veracity was for the jury, and no error was committed in denying the motion to strike.

The remaining assignments have been considered and found without merit.

No reversible error appearing in the record, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.