MILLER, Respondent, v. MILLER, Appellant.

No. 8764.

Submitted November 7, 1947. Decided February 25, 1948.

190. Pac. (2d) 72.

56

Mr. D. W. Doyle, of Conrad, for appellant. Mr. Doyle argued the cause orally.

Mr. Ernest Abel, of Great Falls, for respondent. Mr. Abel argued the cause orally.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the court.

This is an appeal by defendant from a decree for plaintiff in an action to quiet title and to compel the execution of a deed of conveyance.

The suit is in equity. Section 8805, Revised Codes of Montana 1935, defining the powers and duties of the Supreme Court on appeals expressly provides that, ''In equity cases * * * the supreme court *shall review all questions of fact* arising

upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and *determine the same, as well as questions of law,* unless, for good cause, a new trial or the taking of further evidence in the court below be ordered.'' (Emphasis supplied.)

The plaintiff, Phillip W. Miller, is the son of the defendant, Marie Miller. The suit which the son has here instituted against his mother involves the ownership of 360 acres of farm land in Pondera county, Montana.

The son asserts that he is the owner of the described land. This the mother denies and represents that she is the owner of the real property involved.

The pleadings admit that by deed of conveyance dated June 11, 1935, made and delivered to her and on June 20, 1935, recorded in the office of the county clerk and recorder of Pondera county in Book 15 of Deeds at page 66, the mother acquired title to the described lands. The record shows that at all times since June 20, 1935, the legal title to the land has stood and that it still stands on the records of Pondera county in the name of the mother.

The son's complaint avers and the mother's answer admits that on June 11, 1935, the mother became and ''was the owner of said real property.''

Under this state of the record the burden rested upon the son to establish by the kind of competent evidence required by express statutes in this state that on or subsequent to June 11, 1935, his mother parted with her title to the described lands. Sec. 10616, Rev. Codes; In re Day's Estate, 119 Mont. 547, 177 Pac. (2d) 862; Southern Land Co. v. McKenna, 100 Cal. App. 152, 280 Pac. 144; Barras v. Barras, 191 Mich. 473, 158 N. W. 192.

Section 6859, Revised Codes, provides that real property ''can be transferred only by operation of law, or *by an instrument in writing subscribed by the party disposing of the same,*

or by his agent thereunto authorized by writing.'' (Emphasis supplied.)

Section 10611, Revised Codes, provides that, ''No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust over or power concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance, or *other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same,* or by his lawful agent thereunto authorized by writing.'' (Emphasis supplied.)

The son produced at the trial and introduced in evidence as plaintiff's exhibit 1 a certain writing which he asserts is an original quitclaim deed which in his complaint he alleges his mother made and delivered to him ''on or about said 11th day of June, 1935,'' whereby he alleges she ''reconveyed said real property to'' him.

The exhibit wholly fails to evidence that it was ever ''subscribed'' by the mother as is required by sections 6859 and 10611, Revised Codes, supra.

At the bottom of the front page of plaintiff's exhibit 1 are two printed dotted lines to accommodate the signature of the person or persons executing the writing. These lines are blank. They contain no signature nor writing nor trace of any signature or writing whatever. There is nothing on or about plaintiff's exhibit 1 that in anywise or manner tends to prove that the mother ever subscribed, executed or delivered the writing. There is nothing about the exhibit to bind the mother.

It is the well settled law of this state that the mother's title to the real property may not be divested without establishing by the kind of evidence which the statutes prescribe that she subscribed, executed and delivered the exhibit on which her son bases his claim of ownership and rests his case.

Subdivision 1 of section 10516, Revised Codes, provides: ''*There can be no evidence of the contents of a writing, other than the writing itself,* except in the following cases:

1. When the original has been lost or destroyed; in which case the proof of loss or destruction must first be made." (Emphasis supplied.) The son claims that his case comes within the exception provided in subdivision 1 of section 10516, supra.

"As a preliminary to the introduction of secondary evidence upon the ground of loss or destruction of the original document, the proponent must establish the former existence of the primary evidence, as well as its loss or destruction." 20 Am. Jur., Evidence, sec. 439, p. 392.

In 32 C. J. S., Evidence, sec. 836, it is said:

"Before a party can be permitted to introduce secondary evidence of the contents of a written instrument, satisfactory proof must be made of the former existence of the instrument, and this necessarily involves proof of its proper execution or genuineness. It must also be shown, where these things are necessary to the taking effect of the instrument, that it was delivered and accepted."

"Where a party seeks to introduce secondary evidence of the contents of documents, and as a foundation for the introduction of such evidence relies on the fact that the original writings have been lost or destroyed * * * he must first establish this fact." Sec. 837 and note 52.

"The burden of proving the facts essential to a proper foundation for the admission of secondary evidence, such as the loss, destruction, or inaccessibility of an original written instrument, ordinarily rests on the party seeking to introduce the evidence." Sec. 838 and note 65.

"The fact of loss or destruction of an instrument preliminary to the admission of secondary evidence of its contents must be shown with reasonable certainty." Sec. 842 and note 7.

Loss or destruction must be clearly established. Incorporated Town of Sallisaw v. Wells, 90 Okl. 78, 216 Pac. 118.

It is unsafe to accept parol evidence of a writing whose loss is only vaguely accounted for. Clay v. Richardson, Tex. Civ. App., 9 S. W. (2d) 413, 416.

As the mother's signature is necessary to divest her of her

title and as the printed deed form (plaintiff's exhibit 1) does not bear her signature, the son asks an equity court on his own uncorroborated testimony to decree him on such parol evidence to be the owner of the land and to order his mother "to execute and deliver a conveyance of said real property to" him.

The son contends that under the provisions of subdivision 1 of section 10516, supra, he is entitled to introduce parol secondary evidence to establish that his mother had subscribed, made, executed, acknowledged and delivered a deed to him.

The above statute expressly excludes the parol testimony offered by the son to establish his cause of action.

The original writing on which the son relies has not been lost. It is evidence herein. It was produced, in court. It was handed to the court reporter. On it the reporter, with his pen, made an ink notation identifying the writing as plaintiff's exhibit 1. It was exhibited to various witnesses. It was viewed by the district judge.

It has been certified to this court as an original exhibit. It is now before us. It has been photographed. A photostatic copy of the original is incorporated in the transcript on appeal. So, the original writing has not been lost.

Likewise the original writing has not been destroyed. The printed dotted lines whereon a party in executing the instrument would write his name or affix his signature are plainly visible. They are now before this court but these lines bear no signature, no writing, nor do they evidence that the printed form of which they are a part was ever signed, executed or delivered. There is no trace, stain, marking or impression anywhere on the lines or on the exhibit evidencing that the printed form was ever subscribed, executed, or delivered so as to become a deed or effect a transfer of real property.

The printed dotted line whereon a notary public would write his name in taking an acknowledgment to the printed form if it were executed and acknowledged has not been destroyed. It is now before us and plainly visible but it bears no signature, no handwriting, no trace, stain, marking or impression evidencing

a notary's signature or other writing. In short, the original writing introduced in evidence and now before this court bears no evidence whatever tending to show that it was ever signed, executed or delivered by the defendant or by anyone else. Clearly the exhibit wholly fails to evidence that it was ever "subscribed" by the defendant as is required by sections 6859 and 10611, Revised Codes of Montana 1935, supra.

The original writing failing to bear the signature of his mother and failing to show a transfer or conveyance of the land by her, the son attempts to supply the deficiencies in the unexecuted printed deed form and to impeach the writing which he placed in evidence by uncorroborated parol testimony supplied wholly by himself. He would have the court lay aside the original writing, being the "best evidence" of whether his mother had conveyed her interest in the land, and substitute therefor parol secondary evidence to establish that the unsigned printed deed form now before us once bore the signature of his mother as well as the signature of a notary public but that both these signatures had in some mysterious manner disappeared leaving only the printed dotted lines whereon he claims they had been placed. Had the original writing been lost or had it been destroyed still the burden of proof would have been upon the plaintiff to prove not only the contents of the deed but also the signatures which he asserts were on it. 38 C. J., sec. 68, p. 276. However, as before stated, the original writing has not been lost and that part thereof where a grantor would subscribe has not been destroyed, hence the son does not bring himself within the exceptions specified in subdivision 1 of Section 10516, Revised Codes, supra, and the law does not permit the son, to serve his purposes and by parol, to place signatures on the writing where none now appear. Sec. 10516, Rev. Codes.

Forms of printed deeds can be purchased three for a dime almost any place. However such blank forms cannot serve to divest one of the title to his real estate until and unless the form has been filled out and executed by the land owner, which execution includes all the acts which are necessary to give effect

thereto including delivery. The writing must have been "subscribed by the party" to be charged, secs. 6859 and 10611, Rev. Codes, or it is no deed at all. In plaintiff's exhibit 1 we have a writing but we have no deed. It bears no evidence of having been "subscribed" by defendant. It therefore is not binding upon her.

*The Son's Testimony.* At the trial plaintiff testified: That in June 1935 he was the owner of the described 360 acres of land; that it was then worth seven dollars an acre; that it was encumbered by a real estate mortgage to the Federal Land Bank of Spokane on which there was then owing a balance of approximately $3,000; that he also owed various sums to other creditors; that in June 1935 he made and executed a deed to his mother conveying the land to her "because a creditor was going to attach me and tie me up" and that shortly thereafter his mother reconveyed the land to him by signing, acknowledging and delivering to him plaintiff's exhibit 1.

He testified: "We just agreed on that I give her a deed and she give me one back to carry in my pocket. I gave her hers first and we had it around home. When she put hers on record, mine came in. I had my deed made. * * * I took it [plaintiff's exhibit 1] home with me and we had it around home for awhile"; that he kept it in the house for "a week or so" and that he then placed said exhibit 1 in a tin coffee can and buried it in a deep post hole which he dug in the earth floor of a small shed on his mother's farm; that the exhibit remained so buried for nine years, at the end of which time, in June 1944, the son dug it up.

Relative to the then condition of the exhibit the son testified: "To tell you the truth, it was just practically ruined so far as I could see. I was very scared. It is getting worse with age. Every time somebody handles it they knock off some more"; that thereafter the son "wanted a deed with the same description in it, contained in Exhibit '1'" and that he asked his mother for such a deed. He testified: "She promised to give me a deed the next time she went to town, when I asked her,

and she never. Well, she stalled for three weeks before she said no, and she went to see Mr. Doyle, and never give me a deed after that.''

In a deposition taken in February 1945 the plaintiff testified: ''Question: Your mother at that time was claiming to be the owner of the wheat that was raised on this land? Answer: She never claimed any wheat that was raised off the land. The only thing she got off this land under this complaint was checks; she got all the money; I never got any money.''

At the trial the son further testified:

''Q. This land has been assessed in the name of your mother all the time, has it not? A. Since 1935, yes.

''Q. Did you ever ask the assessor to assess it to you? A. No, but I tried to pay the taxes.

''Q. Answer the question? A. Yes.

''Q. When did you ask the assessor to assess it to you? A. This spring.

''Q. In 1946? A. Sure.

''Q. But never before that? A. No.''

*The Mother's Testimony.* At the trial the mother testified: That she and her family, consisting of her husband and four children, resided on a 160 acre farm in what is now Pondera county; that in 1917 her husband died and that she inherited his said farm; that at the time of his father's death the plaintiff was 12 years old; that after the father's death the mother continued to live upon said farm until October 1944, when, because of differences arising with her son, the plaintiff, she was forced to leave her home; that she then removed to Great Falls where she is employed to do the cooking and housework in the home of the Hon. Charles N. Pray, federal district judge; that in 1935 her son made, executed and delivered to her a deed conveying to her the land in question, at which time he advised her that he didn't want the heavily encumbered land because it then was not worth anything and he wanted to buy an automobile.

The mother also testified that in 1942 during World War II

and to avoid being drafted into the army the son requested his mother to convey to him all her land, including that inherited from her husband as well as that conveyed to her by the deed of June 11, 1935, so that he would have sufficient farm land on which to claim exemption from military service, but that instead of transferring her land to him the mother appeared before the draft board in behalf of her son and obtained his deferment from military service.

The mother further testified that at no time did she request her son to give her a deed to the land to protect him from his creditors or from the sheriff and that at no time did she promise or say anything about reconveying the land to him and that at no time did she execute a deed conveying the described land to her son. The mother testified that she has paid the semi-annual installments of $170 each on the Federal Land Bank mortgage on the land as same became due and that such indebtedness has been paid up currently. She further testified:

"Q. Prior to June 11, 1935, how was the land handled in regard to farming it? A. We both worked. I worked outside too; run the tractor.

"Q. You say that,—you mean yourself and Phillip? A. Yes sir.

"Q. What work did you do? A. I run the tractor.

"Q. And did the house work too? A. Oh, yes, and I raised turkeys too.

"Q. Subsequent to 1935, or after June 11, 1935, how was it handled? A. It was the same, only I raised turkeys two years after that. 1936 was the last year I raised turkeys.

"Q. You and Phillip went ahead and did the farming? A. Yes, and we had plenty of hired help after that.

"Q. Who ordinarily made the payments on the Federal Land Bank mortgage on the land in question? A. Well, I did."

*Uncertain and Unsatisfactory Testimony.* In his complaint filed November 8, 1944, the son swears that on June 11, 1935, he made and delivered the quitclaim deed to his mother and that on the *same date*, to-wit, "on or about said 11th day of

June, 1935, and after making and delivering said last mentioned Quit Claim Deed'' the mother made and delivered a deed, in writing, of said property whereby she reconveyed said property to him.

In a deposition taken February 19, 1945, before Mr. Pelletier, the court reporter, the son testified:

''Question: Now, in your complaint you say your mother gave you a deed back to the land on or about June 11, 1935, is that correct? Answer: Yes.

''Question: What was the date of that deed? Answer: I imagine the same date. It is the same date, I guess. I wouldn't swear to it, I don't know exactly.

''Question: Which deed was made first? Answer: The one I gave her, Mrs. Miller.

''Question: How soon after that did she give you a deed? Answer: *The same day, I guess.*

''Question: *Was it all done at the same time?* Answer: *Yes.*''

In his deposition of February 19, 1935, the son also testified that the alleged deed [plaintiff's exhibit 1] from his mother was acknowledged before a woman notary public, the deposition reading:

''Question: Was it done before a Notary Public? Answer: Yes.

''Question: Who? Answer: The Notary Public?

''Question: Yes? Answer: Mrs. Hullinger.

''Question: Where? Answer: In Conrad here.

''Question: But whereabouts in Conrad? Answer: In his office.

''Question: Did you say Mrs. Hullinger or Mr. Hullinger? Answer: Mrs.

''Question: In whose office? Answer: Mr. Hullinger's office.

''Question: Who acknowledged the deed? Answer: What do you mean by acknowledging the deed?

''Question: What Notary Public put the seal on the deeds? Answer: Mrs. Hullinger.''

In a deposition taken before the trial Attorney Henry H. Hullinger, a witness for plaintiff, testified:

"Q. Mr. Hullinger, your wife was never a Notary Public was she? A. She was not."

On further examination Attorney Hullinger testified:

"Q. Mr. Hullinger, during the month of June 1935 Mrs. Hullinger, your wife, was occasionally in your office, was she not? A. Not at the time I was County Attorney. She was not in the office unless she happened to drop in because I had a permanent stenographer.

"Q. But she might have dropped in to your office and been in your office? A. Oh, certainly, sir.

"Q. Who was your stenographer at that time? A. I was trying to think of that, Mr. Doyle. I had Daisy Wolverton first. While she was gone Irene Fogelsong was my stenographer, then I had the Smith girl, or Sarah Margaret Little, I don't know which."

The alleged quitclaim deed being plaintiff's exhibit 1 purports to have been "Made the 20th day of June in the year of our Lord one thousand nine hundred and thirty-five," being a date nine days later than is given in plaintiff's complaint of November 8, 1944, and in his deposition of February 19, 1945.

At the trial, occurring on April 29, 1946, the plaintiff, on his direct examination *changed his testimony* to conform to the date of his exhibit 1, testifying:

"Q. Did your mother sign Plaintiff's Exhibit '1' on the twentieth of June, 1935? A. Yes.

"Q. That was done in Mr. Hullinger's office, was it? A. Yes sir.

"Q. Here in Conrad? A. Yes sir.

"Q. Did you see the signature on it? A. Sure.

"Q. And it was the signature of your mother? A. Yes sir.

"Q. Did the deed, this plaintiff's Exhibit '1', contain a correct description of the land involved in this action? A. Yes.

"Q. Was the deed acknowledged by a Notary Public? A. Yes sir.

"Q. Who was the Notary Public that acknowledged? A. Homer H. Hullinger."

Again the son *changed his testimony.* In his deposition of February 19, 1945, he testified that *a woman* took his mother's acknowledgment to the alleged deed and that such woman was Mrs. Hullinger. At the trial the son testified that Homer H. Hullinger, *a man*, took his mother's acknowledgment to the alleged deed. Thus did the son *change his testimony* after the taking of the deposition of Henry H. Hullinger disclosing the fact that Mrs. Hullinger never had a notary's commission.

The testimony of Attorney Hullinger relative to plaintiff's exhibit 1 is most uncertain and indefinite. In his deposition he testified:

"Q. Did Mrs. Miller employ you to do work for her? A. I have no recollection of it.

"Q. The deeds, or this deed, that you have just testified about. Do you remember who employed you, whether it was Phillip Miller or his mother? A. As I remember it, Mr. Doyle, it was Mr. Miller who came in to the office relative to deeds. I will admit that my recollection is hazy on the proposition, but that is the way I remember the occurrence."

Again:

"Q. Have you any recollection at all of ever having drawn a deed made by Marie Miller? A. Frankly, all I can remember is that Mr. Miller had me prepare some deeds, deed or deeds. I cannot definitely state how many. I remember he was in to have me prepare a deed or deeds to real property.

"Q. Was Mrs. Miller, the defendant in this action, in your office about that time? A. Definitely I cannot place the time when she was in my office. She was in my office on several occasions during the time I practiced law in Conrad.

"Q. *Have you any recollection that she ever signed any deeds or other instruments before you? A. I cannot say positively that I have.*"

The plaintiff admitted that at the time he claims to have buried exhibit 1 (June 1935) he then was doing business with a bank

and that he had a safety deposit box. Relative to burying the exhibit plaintiff testified: "I buried it so nobody would know where it was." Again: "*We had a safety box but somebody might get it there*, and I was driving a car and I might get killed or something, and that is the same as a will."

The principal object of the statute of frauds is to prevent the establishment or divestation of legal or equitable titles to land by the introduction of uncertain and unreliable testimony. 37 C. J. S., Frauds, Statute of, sec. 68. For this reason, even when a writing has actually been lost or destroyed, the law requires clear and convincing proof of its execution, delivery and loss or destruction before it will admit secondary evidence of its contents, the statute requiring that "proof of loss or destruction must first be made." Subdiv. 1 of sec. 10516, Rev. Codes.

"The evidence of the former existence, execution, delivery, loss, and contents of a lost instrument should be clear and convincing. The unsupported parol evidence of one person has been held insufficient to prove a lost instrument." 38 C. J., sec. 71, p. 279; see also Capell v. Fagan, 30 Mont. 507, 77 Pac. 55, 2 Ann. Cas. 37; St. Martin State Bank v. Steffes, 88 Mont. 85, 290 Pac. 259; Wilson v. Davis, 110 Mont. 356, 103 Pac. (2d) 149.

To prevail in this action the burden was upon the plaintiff to establish by clear and convincing proof that his mother made, executed and delivered a deed in writing conveying to him the particular 360 acres of land here involved.

The question is not whether the mother had the opportunity or whether she *could* have subscribed, acknowledged and delivered a deed to the property, but it is whether she actually *did* subscribe, acknowledge and deliver the deed form which plaintiff introduced in evidence as his exhibit 1.

The son testified, "my mother signed it." This the mother denies. To prove his case the son had the writing marked for identification as his exhibit 1 and then introduced same in evidence. The exhibit lies on the table before us as we write this

opinion. We find the printed lines provided to accommodate the signatures of the grantor and of the notary public. There are no signatures on the lines. The exhibit supplies no evidence whatever that there was ever at any time any writing on said lines. The lines are blank. Thus instead of corroborating plaintiff, his exhibit 1 confirms the testimony of the defendant that she did not subscribe her name to the instrument as is required by sections 6859 and 10611, Revised Codes, and there is a failure of proof to establish that the exhibit ever became a deed or that it was ever subscribed by the mother or that she was or is in any wise or manner bound thereby.

The writing having been produced and being now before the court as an exhibit, there can be no evidence that it was subscribed by the mother "other than the writing itself." Sec. 10516. Under the facts of this case and the law applicable thereto the son is denied the right to place his mother's signature on the exhibit by parol. Neither may her title be divested by parol. This the statute of frauds forbids. It is well settled that title to realty may not rest in parol. Vobless v. Weisenthal, 293 Mich. 565, 292 N. W. 493. Plaintiff's exhibit clearly shows that it is partly printed and partly typewritten. The printing has not faded so as to become illegible — the typewriting has not vanished.

The plaintiff has introduced no evidence whatever to show what mysterious process would have removed the alleged signatures of his mother and the notary from the exhibit without similarly affecting the printing and typewriting thereon.

Furthermore, if the exhibit had been acknowledged and a notary seal had been placed thereon, would not the seal have made depressions in the paper where the various raised letters on the seal pressed in? We find no such depressions on the exhibit.

In June 1935 when the land was conveyed to the mother it had but little value, being worth but seven dollars per acre or an aggregate of $2,520, according to the son's testimony. There was an outstanding mortgage on which approximately $3,000

was then owing so that, according to the record, the land then was not worth the amount of the mortgage against it. These were the conditions when the son permitted his mother to take over the land and assume the payment of the installments on the mortgage indebtedness, one of such installments falling due every six months.

Since 1935 the record legal title to the land has stood continuously in the name of the mother—the property has been assessed to her—she has paid the taxes and in addition she has paid $340 annually on the mortgage, such payments totaling considerably more than the $3,000 principal owing at the time she acquired title to the land.

In the complaint which he filed on November 8, 1944, seeking to divest the title of his mother, the son alleged that he "has, on numerous occasions, requested said defendant to reconvey said real property to the plaintiff, and on or about the 8th day of November, 1944, the plaintiff presented to the defendant a form of Quit Claim Deed, in writing, containing a grant of said real property from said defendant to the said plaintiff, and demanded that the defendant execute the same and have the same acknowledged before a Notary Public at the expense of the plaintiff, but the defendant has refused and still refuses to reconvey the said property to the plaintiff."

The form of quitclaim deed which the son alleges he presented to his mother on November 8, 1944, and which he alleges she refused to sign could not effect the transfer of her title for the simple reason that the form was not executed or delivered by her. The deed form on which plaintiff relies to establish his title to the land in question and which he introduced in evidence as his exhibit 1, and which he claims he kept buried in a tin coffee can deposited at the bottom of a post hole for a period of nine years, wholly fails to evidence that it was ever executed by the mother. The exhibit no more establishes a transfer of title than did the blank deed form presented to the mother for her signature on the day this action was commenced. Plaintiff's exhibit 1 acquired no additional force, virtue or evidentiary

value because of its mistreatment by plaintiff or because he kept it in the dark and hidden in a hole in the ground for some nine years.

In Barcroft v. Livacich, 35 Cal. App. 2d 710, 96 Pac. (2d) 951, 957, it is said: "The rule of law regarding sufficiency of evidence to establish the contents of a lost instrument is well stated in the case of Caine v. Briscoe, 78 Cal. App. 660, 248 Pac. 774, 777, where the court comments on 'placing sole reliance, for the support of an important issue, upon the frailties, or, as truly may be said, the treachery of human memory, the burden of proving the fact necessarily carries with it more than the usual measure of responsibility'. Also in Deacon v. Bryans, 88 Cal. App. 322, 263 Pac. 371, it was held that the evidence must show without reasonable doubt the substantial parts of the instrument and that the testimony of the witness need not be accepted as true, merely because there is no direct evidence to contradict it, as evidence may, within itself, bear the earmarks of falsity."

In Harrison v. Riddell, 64 Mont. 466, 210 Pac. 460, 464, this court said: "The evidence being all before us, we are authorized in equity to make independent findings of fact, respecting the rights of the parties overlooked by the trial court, and to direct entry of a proper judgment. [Citing several Montana cases.] We have carefully weighed and viewed all the evidence, and do not consider that the findings as made by the district court are warranted." See also Barnard Realty Co. v. City of Butte, 55 Mont. 384, 177 Pac. 402; Lowry v. Carrier, 55 Mont. 392, 177 Pac. 756; Dahl v. Cayias, 110 Utah 398, 174 Pac. (2d) 430; Green v. Palfreyman, 109 Utah 291, 166 Pac. (2d) 215.

It was to prevent exactly what has happened in this case that there was enacted in England in the year 1677 an Act entitled, "An Act for Prevention of Frauds and Perjuries" (Statute 29, Charles II, Chapter 3), commonly termed the "Statute of Frauds." So it is that in this state there are various provisions of the substantive law patterned after and enacted to accom-

plish the same purpose, among which are sections 6859, 10611 and 10516, Revised Codes of Montana 1935.

After careful consideration of the record and the briefs of counsel, supplemented by considerable independent research, we are unable to reach any other conclusion than that respondent has failed to sustain the burden imposed upon him by law in a case of this character and that there has been a failure of proof herein. Accordingly the decree is reversed, the cause ordered dismissed, and costs taxed against respondent.

Mr. Justice Choate concurs.

Mr. Justice Angstman (concurring in result).

I concur in the result reached by Chief Justice Adair but not with all that is said in his opinion.

I think the case calls for application of the rule enunciated in Casey v. Northern Pac. Ry. Co., 60 Mont. 56, 198 Pac. 141; Morton v. Mooney, 97 Mont. 1, 33 Pac. (2d) 262, and kindred cases.

As pointed out in the opinion of the Chief Justice, plaintiff made self-contradictory statements; his statement that defendant signed and acknowledged the deed is contrary to the physical facts, in that the deed, neither at the place where the notarial seal usually appears, nor elsewhere, shows any indication that there ever was a notarial seal on it. In fact there is no indication on the deed offered in evidence that it was ever signed. The burial of the deed for many years might be sufficient to account for the absence of the signature but it does not give a satisfactory explanation of the absence of the seal of the notary public. It seems to me that since the offered deed contains matters placed thereon by the typewriter, it would have retained the imprint of the notarial seal if one had been placed thereon or the fiber of the paper would have been so stretched and weakened by the imprint of the seal that the deed would have disintegrated at the place where the seal was affixed to a greater degree than at other places, contrary to the facts as shown by the deed exhibited to us.

Therefore, on the whole plaintiff's evidence is so unsatisfactory that findings and judgment based thereon should not stand.

Mr. Justice Metcalf (dissenting).

The complaint sets forth two causes of action, one to establish a deed and the second to quiet title. The decree of the trial court recites the facts as follows:

"That on or about the 11th day of June, 1935, and prior thereto, the above named plaintiff, Phillip W. Miller, was the owner and in possession of the following described real property, situated in the County of Pondera, State of Montana, to-wit: The South Half (S½) and the Southwest Quarter of the Northwest Quarter (SW¼NW¼) of Section Twenty-five (25), Township Twenty-eight (28) North Range One (1) West of the Montana Meridian, Montana.

"That on said 11th day of June, 1935, while the plaintiff was such owner, he made and delivered a Quit Claim Deed conveying said last described real property to the above named defendant, Marie Miller, which said Quit Claim Deed was duly acknowledged, so as to entitle the same to be recorded, and the same was, thereafter on the 20th day of June, 1935, by the above named defendant, Marie Miller, recorded in the Office of the County Clerk and Recorder of Pondera County, Montana, in Book 15 of Deeds, Page 66.

"That on the 20th day of June, 1935, the above named defendant, Marie Miller, made and delivered a Quit Claim deed in writing of said real property to the above named plaintiff, Phillip W. Miller, whereby said Marie Miller reconveyed said real property to said plaintiff and ever since the plaintiff has been and now is in possession of said real property; and ever since has been and now is the owner of said real property.

"That said deed of conveyance made by said Marie Miller to said Phillip W. Miller, was duly acknowledged by said Marie Miller before a notary public, so as to entitle the same to be recorded and the same was delivered to said Phillip W. Miller, but the same was not recorded, and after the delivery of said deed to said Phillip W. Miller, the same was placed in a re-

ceptacle and kept therein, but without the knowledge and without the fault of the plaintiff, the said deed of conveyance made and delivered by said Marie Miller, to said Phillip W. Miller, in a manner unknown to the plaintiff became wet, and by reason thereof the paper on which said deed was written deteriorated to such an extent that the same fell apart and a large part of the same was wholly illegible to such an extent that it cannot be ascertained from said deed of conveyance what description was contained therein nor what all of the provisions in said deed consisted of.

"That the defendant has refused and still refuses to execute and deliver another deed of said premises to the plaintiff.

"* *.* that the said defendant, Marie Miller, on the 20th day of June, 1935, did make. execute and deliver a deed in writing to the Plaintiff, Phillip W. Miller, whereby said Marie Miller, did convey to said Phillip W. Miller the following described real property. situated in Pondera County, Montana, to-wit: The South Half (S½) and the Southwest Quarter of the Northwest Quarter (SW¼NW¼) of section Twenty-five (25), Township Twenty-eight (28) North, Range One (1) West of the Montana Meridian. Montana; and that said deed was duly acknowledged, so as to entitle the same to be recorded in the office of the County Clerk and Recorder of Pondera County, Montana, but that the same, without the fault of said Phillip W. Miller, has been mutilated to such an extent that it cannot be determined from the same that said real property was conveyed by said Marie Miller to said Phillip W. Miller.

"It is further ordered, adjudged, and decreed, that the said deed made by said Marie Miller on said 20th day of June, 1935, conveyed all the right, title, and interest of said Marie Miller in and to the real property herein described and that said Phillip W. Miller is the owner of said real property and that the conveyance of said real property by said Marie Miller and the said deed whereby the said conveyance was made are hereby ordered established."

By this decree the defendant was ordered to convey the

premises claimed to the plaintiff and title to these premises was quieted in the plaintiff. The appellant's specifications of error raise two questions to be considered by this court. One, is there substantial evidence to sustain the judgment of the trial court, and two, what relief may be granted to the grantor of an admitted fraudulent conveyance when he seeks to establish a destroyed deed reconveying the property to him.

The plaintiff testified that in June 1935, while he was the owner of the land described in the complaint, he owed a sum of money to one Martin Grinde and fearing that Grinde was going to attach and sell his property. he deeded the premises to his mother, the defendant herein. This deed was executed on June 11, 1935, and recorded June 20, 1935. The plaintiff further testified that before delivery of the deed to his mother she reconveyed the property to him by a deed dated June 20, 1935. The plaintiff kept this deed of reconveyance about the house for a period of time and then placed it in a coffee can which he buried in a shed on the farm where he was living.

In 1944 the plaintiff dug up the coffee can and found that the can had rusted and fallen away and the deed therein had become wet and the paper had disintegrated so that it was practically illegible. It is this deed that the plaintiff seeks to establish and upon which he bases his claim to quiet title to the premises in question.

In the majority opinion the Chief Justice has cited sections 6859 and 10611, Revised Codes of 1935, which require that real property can only be transferred by an instrument in writing subscribed by the transferor. These two sections are not applicable under the theory of the plaintiff or under the findings of the court. It was the plaintiff's contention that his mother executed and signed a valid deed and that while the deed was buried for nine years the signature of the transferor as well as that of the notary had dissolved and disappeared and the court so found.

The plaintiff introduced the deed into evidence and had it identified as plaintiff's exhibit 1. Since the description of the

land conveyed had been partially worn away and the signatures had faded and disappeared it was necessary for him to complete the instrument by parol evidence. The statute expressly provides for the admission of parol evidence to complete a document and prove its authenticity. "There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: 1. When the original has been lost, or destroyed; in which case the proof of loss or destruction must first be made. * * *" Sec. 10516, Rev. Codes.

It is self evident from an examination of the exhibit that it has been macerated, partially dissolved and disintegrated, and in effect, destroyed. Therefore the plaintiff was entitled to introduce parol evidence to complete the document. Sec. 10531, subd. 14, Rev. Codes 1935. Insofar as the application of this rule is concerned, destroyed instruments and lost instruments are treated alike. IV Wigmore on Evidence, 3d Ed., sec. 1194, p. 337.

Upon proof of loss or proof of destruction "together with proof of the due execution of the writing, its contents may be proved by a copy, or by a recital of its contents, in some authentic document; or by the recollection of a witness * * *." Sec. 10585, Rev. Codes 1935.

Such parol proof of the contents, the authenticity and execution of a written instrument, is of course quite different from an attempt to prove a transfer of land by parol when no written instrument ever existed.

A more serious question is the proof of execution and authentication. Before a witness may testify as to the contents of a document allegedly lost or destroyed, a foundation must be laid by proving that such an instrument existed, that it was duly executed and that the document about which he is testifying is the identical one that was executed and is now destroyed. 2 Elliott on Evidence, sec. 1458; Jones Commentaries on Evidence, sec. 814, p. 1491 and sec. 857, p. 1557, 1558; 16 Am. Jur., Deeds, sec. 372, p. 650.

This court has adopted the language of Tayloe v. Riggs, 1 Pet.

591, 26 U. S. 591, 7 L. Ed. 275: " 'When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and, if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impressions, made by a conversation antecedent to the reduction of the agreement.' " Capell v. Fagan, 30 Mont. 507, 77 Pac. 55, 2 Ann. Cas. 37.

Consequently this court has declared that evidence of the former existence, execution, delivery, loss and contents of a lost instrument should be clear and convincing. Wilson v. Davis, 110 Mont. 356, 363, 103 Pac. (2d) 149; St. Martin State Bank v. Steffes, 88 Mont. 85, 88, 290 Pac. 259; Capell v. Fagan, supra. Decisions in other jurisdictions relative to the sufficiency of proof are collated in 148 A. L. R. 402; and see Lende v. Ferguson, 237 Iowa 738, 23 N. W. (2d) 824; Taylor v. Bank of America Nat'l Trust & Sav. Ass'n, 67 Cal. App. (2d) 59, 153 Pac. (2d) 617; Barranco v. Kostens, —— Md., ——, 54 A. (2d) 326.

The trial court specifically found that the defendant "made and delivered a Quit Claim deed in writing of said real property to the above named plaintiff" and that "said deed of conveyance made by said Marie Miller to said Philip W. Miller was duly acknowledged by said Marie Miller before a notary public." When we say the evidence must be clear and certain and convincing to prove the execution of a lost or destroyed instrument, we mean it must be clear and certain and convincing to the trier of facts. In this case it is the district judge. It is he who weighs the evidence and determines the credibility of the witnesses. Ely v. Montana State Federation of Labor, Mont., 160

Pac. (2d) 752; State ex rel. Brindjonc v. District Court, 93 Mont. 188, 17 Pac. (2d) 1094; Dockins v. Dockins, 82 Mont. 218, 266 Pac. 398; Blinn v. Hutterische Soc., 58 Mont. 542, 194 Pac. 140; Orton v. Bender, 43 Mont. 263, 115 Pac. 406; Consolidated Gold & Sapphire Min. Co. v. Struthers, 41 Mont. 551, 111 Pac. 150; Bowen v. Webb, 37 Mont. 479, 97 Pac. 839, and many others.

The Chief Justice has pointed out that this is an equity case and under section 8805, Revised Codes of Montana 1935, "in equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law * * *"

So that on appeal this court has more latitude in its review of the facts as determined by the trial judge than it does in a case at law. But the boundaries of our authority in re-examining and re-appraising the facts in an equity case are well established by a long line of Montana decisions.

Traditionally, of course, as a result of the historical differences in the development of the systems of equity and law, equity review has been a re-examination of the entire record, on both the facts and the law, while at law the appellate court is limited to a re-examination of purely legal errors which may have been committed by the trial court. So that before the reformed procedure equity review might almost amount to a de novo reconsideration of the facts.

But our Constitution and our statutes provide for but one form of civil action. Art. VIII, sec. 28, Mont. Const. and sec. 9008, Rev. Codes 1935. This union of law and equity has brought about a decline in the procedural differences between the two systems. In this jurisdiction the decline has been sufficiently marked so that text writers have declared that while we "give lip service to the old line of demarcation, we construe away its force by extensive application of the presumption in favor of

the trial court's finding." Review of Findings and Fact, 4 Univ. of Chicago Law Review, 190, 215.

Clark on Code Pleading says: "In some states the manner of appellate review of equity questions is made the same as that of jury questions—review for errors of law only." P. 67. As authority, he cites Watkins v. Watkins, 39 Mont. 367, 102 Pac. 860, 861. The cited case sets forth the rule as it has been established in Montana in a long line of cases beginning with Ming v. Truett, 1 Mont. 322 and continuously reaffirmed ever since.

"In reviewing the evidence, this court will start out with the presumption that the jury and the trial court did their whole duty and that the findings are supported by the evidence. It will then endeavor, by a fair, unprejudiced, and dispassionate examination of the evidence, to determine whether there is any substantial support for the findings in the evidence, always bearing in mind that it is not assisted by the presence of the witnesses, and that a witness' manner and demeanor on the stand might justify a conclusion by court or jury not at all warranted by a review of the evidence reduced to cold print. If, acting under the guidance of the rule here laid down, we determine that the testimony furnishes reasonable ground for different conclusions, then we will hold that there is no decided preponderance in the evidence against the findings, and decline to disturb them. In the case of Finlen v. Heinze, supra [32 Mont. 354, 80 Pac. 918], this court said that 'it is incumbent upon the appellant to show that the preponderance of the evidence is against the findings of the trial court, before we will disturb such findings upon the ground of insufficiency of the evidence.' A careful reading of the whole case will convince anyone that the court was referring to a clear and decided, and not a mere, preponderance. In passing, we may say that we are convinced that every reason urged in favor of the policy of non-interference by the appellate court with the findings of the trial court, except where there is a decided preponderance in the evidence against such findings, applies with equal, if not

greater, force to the findings of a jury.'' Watkins v. Watkins, supra.

In the case of Van Voast v. Blaine County, Mont., 167 Pac. (2d) 563, 564, in an opinion written by the author of the majority opinion in the instant case, this court quoted Bickford v. Bickford, Mont. 158 Pac. (2d) 796, 797, '' 'On appeal to this court the presumption is that the decree and findings of the trial court are correct. (Citing cases.) The findings of the trial court must be sustained if they are supported by substantial evidence. Kommers v. Palagi, 111 Mont. 293, 108 Pac. (2d) 208. All legitimate and reasonable inferences must be indulged toward upholding the findings. Welch v. Thomas, 102 Mont. 591, 61 Pac. (2d) 404.' '' Other cases to the same effect are Ryan v. Bloom, Mont., 186 Pac. (2d) 879; Demos v. Doepker, Mont., 182 Pac. (2d) 469; Leigland v. Rundle Land & Abstract Co., 64 Mont. 154, 208 Pac. 1075; Atkinson v. Roosevelt County, 71 Mont. 165, 227 Pac. 811; Bordeaux v. Bordeaux, 32 Mont. 159, 80 Pac. 6; Finlen v. Heinze, 32 Mont. 354, 80 Pac. 918, and many others. And see Bosanatz v. Ostronich, 57 Mont. 197, 204, 187 Pac. 1009, 1011, where the court said ''Where the evidence is conflicting in an equity case, the findings of fact by the trial judge rest upon the same principle as the verdict of a jury.'' Citing Ingalls v. Austin, 8 Mont. 333, 20 Pac. 637.

This plaintiff came into the trial court charged with the burden of establishing by a preponderance of evidence satisfactory to the trial judge, the existence, the execution and the validity of the deed to the property he claimed. He was required to prove these facts by evidence clear, certain and convincing to the court. He sustained this burden in the trial court and findings in his favor were made by the district judge.

He now comes into this court with the presumption that the findings of the trial court are correct. The question is no longer whether the deed was executed by the defendant or not. That question has been decided by the trial court. This is a court of review. Our question is whether we can find in the record substantial evidence to sustain the findings of the trial court. So

that unless it appears affirmatively that the evidence preponderates against the findings we must affirm the decision. The burden has shifted—on appeal it is the appellant who has the burden of showing error. Dalbey v. Equitable Life Assurance Soc. of United States, 105 Mont. 587, 74 Pac. (2d) 432; Koppang v. Sevier, 106 Mont. 79, 75 Pac. (2d) 790; Gibbs v. Gardner, 107 Mont. 76, 80 Pac. (2d) 370; Wills v. Midland Nat'l Life Ins. Co., 108 Mont. 536, 91 Pac. (2d) 695; Hill v. Frank, Mont., 164 Pac. (2d) 1003.

In order to sustain this burden the appellant must affirmatively show that the conclusion of the trial court cannot be sustained on any theory. Gibbons v. Huntsinger, 105 Mont. 562, 74 Pac. (2d) 443; State v. American Bank & Trust Co., 75 Mont. 369, 243 Pac. 1093; Thompson v. Chicago, B. & Q. R. Co., 78 Mont. 170, 253 Pac. 313.

The only evidence that the deed was ever executed by the defendant is the testimony of the plaintiff himself. He testified:

"Q. What took place in Mr. Hullinger's office in Conrad on the twentieth of June, 1935? A. He just drawed up the deed and my mother signed it, and the stenographer sealed it and that is I guess about all, other than me paying him for doing it.

"Q. I will show you Plaintiff's Proposed Exhibit '1' and ask you whether or not that is the deed that was made by your mother at that time? A. Yes.

"Q. When you speak of your mother, you mean the defendant in this action? A. Yes sir.

"Q. Did your mother sign plaintiff's Exhibit '1' on the twentieth of June, 1935? A. Yes.

"Q. That was done in Mr. Hullinger's office, was it? A. Yes sir.

"Q. Here in Conrad? A. Yes sir.

"Q. Did you see the signature on it? A. Sure.

"Q. And it was the signature of your mother? A. Yes sir."

(The exhibit 1 mentioned in plaintiff's testimony is the mutilated deed that was buried in the coffee can.)

Wigmore says that testimonial evidence as to the execution

of an instrument is always sufficient when the direct testimonial evidence to execution is that of a witness who saw the very act of writing.· VII Wigmore on Evidence, sec. 2131, p. 571.

In other respects the evidence given by the plaintiff is contradictory. But here is a direct statement that he saw the defendant sign the deed. The attorney who allegedly notarized the instrument did not remember the specific deed sufficiently to identify it and did not recall whether or not Mrs. Miller signed it. The defendant categorically denied that she had ever executed the deed. There was a direct conflict which the trial judge resolved in favor of the plaintiff.

The universal rule is that the trial court's findings on conflicting evidence will not be disturbed. Walker v. Mink, Mont., 158 Pac. (2d) 630; Kerrigan v. Kerrigan, 115 Mont. 136, 139 Pac. (2d) 533; Doney v. Ellison, 103 Mont. 591, 64 Pac. (2d) 348; Moser v. Fuller, 107 Mont. 424, 86 Pac. (2d) 1, 2.

In the latter case the court said: "In some respects the evidence was not entirely satisfactory; * * *. However, there was a substantial conflict in the evidence, which was resolved by the trial court in defendant's favor, and it cannot be said that there was no sufficient evidence in support of the judgment, or that the evidence decidedly preponderated against it. Pope v. Alexander, 36 Mont. 82, 92 Pac. 203, 565. Certainly, there is credible evidence in the record in support of the judgment."

In Doney v. Ellison, supra, the court was confronted by conflicting evidence and there said: "There was ample testimony in the record to justify a finding by the court either way. * * * The rule of this court is well established that a finding made by the trial court on conflicting testimony will not be disturbed. Carboni v. Carboni, 99 Mont. 279, 43 Pac. (2d) 634, and cases therein cited." 103 Mont. at page 596, 64 Pac. (2d) at page 349.

The plaintiff has testified that he saw his mother sign the deed. That is enough. The direct evidence of one witness is sufficient proof of any fact except perjury and treason. Sec. 10505, Rev. Codes 1935. This is true even where the witness is a party to the action. Lizott v. Big Blackfoot Milling Co., 48

Mont. 171, 136 Pac. 46. The plaintiff did not need corroboration. Preponderance of evidence may be established by testimony of a single witness against a greater number. Vesel v. Polich Trading Co., 96 Mont. 118, 28 Pac. (2d) 858; Stauffacher v. Great Falls Public Service Co., 99 Mont. 324, 43 Pac. (2d) 647; Wallace v. Wallace, 85 Mont. 492, 279 Pac. 374, 66 A. L. R. 587; Hill v. Haller, 108 Mont. 251, 90 Pac. (2d) 977.

After the proper foundation was laid the witness was permitted to testify as to the contents of the instrument. The same quantum of proof is required for contents of a written instrument as was required for proof of existence and execution. The evidence to establish contents must be clear and certain. Capell v. Fagan, supra; St. Martin's State Bank v. Steffes, supra; Wilson v. Davis, supra. But it is not necessary to prove the identical words of the instrument. Too strict an insistence on verbal accuracy would defeat the rule. So that all that is required is the substance of the material parts. Keil v. Wilson, 47 N. M. 43, 133 Pac. (2d) 705, 148 A. L. R. 400; VII Wigmore on Evidence, sec. 2105; 2 Jones Commentaries on Evidence, 2nd Ed., sec. 858.

In the instant case the plaintiff has identified the mutilated deed introduced to the satisfaction of the trial court and the testimony of the plaintiff is that the missing description is the same as the description in the deed from the plaintiff to the defendant executed on June 11, 1935. The other elements of the deed can be made certain by an examination of the exhibit.

It must be held that the evidence to prove the execution, previous existence and contents of the deed is legally sufficient to sustain the trial court.

It is suggested in the specially concurring opinion of Mr. Justice Angstman that the rule laid down in Casey v. Northern Pac. Ry. Co., 60 Mont. 56, 198 Pac. 141, is applicable. He is referring to the rule that whenever the surrounding circumstances make the story of a witness improbable or incredible or whenever the testimony is inherently impossible, the appellate court may disregard such testimony and findings based on such

testimony. The rule cited is a familiar rule universally accepted, but one that should be cautiously applied. See annotation on the subject of acceptance of evidence contrary to scientific principles or laws of nature in 21 A. L. R., at page 141.

A frequently quoted case on this subject is Austin v. Newton, 46 Cal. App. 493, 189 Pac. 471, 472, as follows: "On the other hand, as an appellate court, it is our bounden duty to exercise great care and caution in applying the tests of common sense and common knowledge of physical laws to a given state of facts. Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable. For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is contrary to the evidence."

No evidence was introduced as to the effect of the action of chemicals in the soil, or moisture or other conditions upon a deed buried in a tin can for nine years. In the absence of evidence of this nature an appellate court should indulge the presumption that the trial court's finding is correct. It is not beyond the realm of probability that the action of water or chemcials in the soil would remove ink of the nature used in a pen and leave typewriting or printer's ink or that the same reaction that dissolved the paper in the deed might smooth out the impression of the notarial seal.

The courts may take judicial notice of the laws of nature, sec. 10532, subd. 8, Rev. Codes 1935, and under proper circumstances, judicial notice of recognized laws of nature or science might require a court to disregard evidence in direct conflict therewith.

But it is equally true that the courts do not take judicial notice of scientific facts which are not common knowledge. Wig-

gins v. Industrial Acc. Board, 54 Mont. 335, 343, 344, 170 Pac. 9, L. R. A. 1918F, 932 Ann. Cas. 1918E, 1164.

"Even though the laws of nature or science are so well known that they become matters of judicial knowledge, their application to the facts of a particular case may still remain a valid matter of controversy. The effect of such natural laws, however, should be clear and unescapable before a court will be justified in ignoring specific allegations of a pleading." Roy v. Smith, 131 Cal. App. 148, 21 Pac. (2d) 151, 153.

The plaintiff admitted that the transfer of the property he is now seeking to recover was for the purpose of placing the property beyond the reach of creditors. The defendant has invoked the familiar maxim that he who comes into equity must come with clean hands and relies on a corollary of that rule that where there has been a conveyance to prevent creditors from reaching the property, equity will leave the parties in the position in which they have placed themselves, refusing any affirmative aid to either of the fraudulent participants. 2 Pomeroy's Eq. Juris., 5th Ed., sec. 401, p. 104; 24 Am. Jur., Fraudulent Conveyances, sec. 118, p. 267.

The rule cited is not here applicable. This is not an action to force a reconveyance or to enforce a resulting trust. The plaintiff here is seeking to quiet title and to establish a lost deed already executed reconveying the property. The trial court has determined that the defendant reconveyed the property and found that the mutilated deed offered in evidence was genuine. The applicable rule, then, is set forth in section 401a, 2 Pomeroy's Equity Jurisprudence, supra: "If however the grantee recognizes the trust and reconveys the property to the grantor, the courts will not interfere with the latter's possession, no question being raised as to the rights of creditors." See also note in 89 A. L. R. 1168.

In the recent case of Fulton v. McCullough, 232 Iowa 1220, 7 N. W. (2d) 910, there is an excellent discussion of this proposition under a similar factual situation. See also McCann v. Commissioner of Internal Revenue, 6 Cir., 87 F. (2d) 275, 108

A. L. R. 1504; Williamson v. Kinney, 52 Cal. App. (2d) 98, 125 Pac. (2d) 920; Blankenship v. Green, 283 Ky. 700, 143 S. W. (2d) 294.

The trial court has established the deed from the defendant to the plaintiff reconveying the premises as a valid and authentic instrument. The plaintiff then is not relying on the duty of the defendant to reconvey but upon an actual deed. There is no question of the rights of creditors of either party. As between the parties to this action the deed of reconveyance is valid. 24 Am. Jur., Fraudulent Conveyances, sec. 160, p. 295.

The decree should be affirmed.

Mr. Justice Gibson, (dissenting).

I concur in the foregoing dissent of Mr. Justice Metcalf.

Rehearing denied March 9, 1948.